128 So.2d 333

**ST. CLAIR COUNTY and State Highway Department**

v.

**TOWN OF RIVERSIDE.**

7 Div. 507.

Supreme Court of Alabama.

May 25, 1961.

Starnes & Holladay, Pell City, for appellants.

Frank B. Embry, Pell City, for appellee.

SIMPSON, Justice.

The Town of Riverside (appellee) filed in the Circuit Court, In Equity, of St. Clair County, a bill, which as last amended, sought an injunction and a mandatory order against appellant, Honorable Sam Engelhardt, as Highway Director of the State of Alabama. The bill alleged that "the highway from Pell City to and through Riverside, known as Bankhead Highway No. 78, has been a public way and Street and Highway, within the corporate limits of the Town of Riverside for more than thirty years used by the general public." The bill alleges that respondent "erected signs along said Street and Hiway" closing it and diverting traffic away from the use of said way, Street or Highway without notice to or knowledge of complainant. The bill prays that respondent be required to remove the signs and all obstructions from the highway and to cease and desist from obstructing Highway 78. This bill was amended on February 15, 1960 by having it sworn to and by asking for a temporary writ of injunction.

The road in question was formerly designated "old Bankhead 78", which ran through the Town of Riverside. Bankhead 78 was rerouted to the south some twenty-five years ago. The old route along with another paved road were used to connect Riverside with the relocated Highway 78. The Highway Department in the construction of Interstate I–20, a limited access facility, erected barriers and closed old Bankhead 78 at a point near the northern right of way line of the new interstate facility. The other paved road from Riverside Road to the "new U. S. 78" was not interrupted. Appellant states that the closing of "old 78" was in accordance with the approved plans of the State Highway Department and of the U. S. Bureau of Public Roads.

The trial court granted the temporary injunction as prayed for. The basis of the court's findings was that the closed road which had served the inhabitants of the town for many years was a more convenient route of travel for the people of the town and some other parts of St. Clair County. Of consequence of which it ordered the appellant to open up the road and remove the obstructions and that "irreparable injury will be done to the complainant if a writ of injunction is not granted". It is to be noted that there are no claims and no

findings of the court that in constructing the highway through the village the appellant acted beyond his authority or arbitarily, capriciously, or fraudulently in blocking said road.

Questions Posed by This Appeal:

1. Is an injunctive action properly maintained against the Highway Director of the State of Alabama in his official capacity?

2. (a) Does the State of Alabama, acting through the State Highway Department, have the authority to close an existing street or highway at a point where the existing highway intersects an interstate limited access facility?

(b) Does the Highway Department of the State of Alabama have the legal authority under Act 104, General Acts of Alabama 1956, page 148, to close one of the two highways leading into and through a municipality?

(c) Does the State of Alabama Highway Department have the legal authority under Act 104, supra, to close or vacate a highway which is also utilized as a city street?

█ 1. Injunctive action may be maintained against a state official, if the official is acting beyond the scope of his authority or acting illegally, in bad faith, or fraudulently. A state's immunity from suit does not apply when "officers under a mistaken interpretation of the law acting in the name of the State commit acts not within their authority which are injurious to the rights of others." Curry v. Woodstock Slag Corp., 1942, 242 Ala. 379, 6 So. 2d 479, 480. Glass v. Prudential Insurance Co. of America, 246 Ala. 579, 22 So.2d 13; Horn v. Dunn Brothers, Inc., 262 Ala. 404, 79 So.2d 11; Finnell v. Pitts, 222 Ala. 290, 132 So. 2. In 49 Am.Jur., States, Territories, and Dependencies, pp. 308–310, the following observation is pertinent:

"Nor does the immunity of the state from suit relieve an officer of the state from responsibility when he acts tortiously on the rights of an individual, or in excess or violation of his authority, even though he acts or assumes to act under the authority and pursuant to the directions of the state. * * * An officer who acts illegally is not acting as an officer, but stands in the same light as any other trespasser."

It seems, therefore, that the ultimate question is whether the bill alleges, and the proof shows, conduct which is beyond the scope of the Highway Director's authority, or is arbitrary.

2. (a) Does the State of Alabama acting through the State Highway Department have the authority to close an existing street or highway at a point where the existing highway intersects an interstate limited access facility?

General Authority.

The Constitution of Alabama 1901 (Amendment 11, Article 20, Amendment 21, Article 20A) gives the Highway Department the authority to engage in the construction, improvement, repair and maintenance of public streets, highways and bridges in the State of Alabama. Scott v. Alabama State Bridge Corp., 233 Ala. 12, 169 So. 273; In Re Opinion of the Justices, 225 Ala. 460, 143 So. 900.

Title 23, § 3, Code of Alabama 1940 gives the Highway Department authority to make contracts or agreements to construct and maintain roads in the State which are in municipalities and serve as roads of connection in the state highway system.

█ Therefore, the Highway Department has authority to construct and maintain city streets if they are roads of connection within the state Highway system.

In Pruett v. Las Vegas, 261 Ala. 557, 74 So.2d 807, 810 this Court thus construed the authority of the Highway Director in locating highways:

"The matter of locating, constructing and maintaining highways is not a function of the courts. In that matter the highway director exercises an ad-

ministrative and quasi-legislative function which, when free from fraud or corruption, cannot be reviewed by the courts."

In its original brief appellee points out that the "rights of the citizens and those doing business in the Town of Riverside are involved and not some single individual." In this regard the Court in the Las Vegas case, supra, had this to say:

"No citizen or taxpayer, as such, has or can acquire any vested property right in a state highway which deprives the Highway Director of the power conferred by statute to construct roads and bridges. * * * Private inducements or considerations cannot rightly enter into the question as to whether a highway should be constructed. The controlling factor must always be the good of the *general public* and not the convenience or *financial gain of the people who live along any particular way.*" (Emphasis Supplied.)

We do not think the effect of the above statement different when a group of citizens or taxpayers bring the action. The interest of the general public would continue to control.

In 25 Am.Jur., Highways, § 118, page 415 the following observation is made:

"Except as restricted by the Constitution, the state's power is plenary in respect to the vacation of streets and highways within its borders. Such power may be exercised directly by the legislature, or may be delegated by it to subordinate governmental agencies."

And in 18 Am.Jur., Eminent Domain, § 83, Pocket Supplement, page 93:

"The broad power of the state to take property of one of its political subdivisions or other agencies in the absence of the constitutional restrictions, has rarely been questioned. And there appears to be no dissent from the proposition that, subject to constitutional restrictions, a state legislature has the general power to authorize or, on the other hand, forbid one of the political subdivisions or other agencies of the state to take, either by formal condemnation proceedings or otherwise, the property of another subdivision or agency."

In 39 C.J.S. Highways § 97, the following appears: "In the exercise of the police power, the state may change or alter public highways." In Alabama Great Southern Railway v. Denton, 239 Ala. 301, 195 So. 218, it was held that the State has plenary power to relocate highways.

And in 40 C.J.S. Highways § 179: "Where authority is conferred on the state highway officers to designate, locate, and alter roads of the * * * highway system, they may do so without consent of the local authorities."

2. (b) Does the authority to vacate, locate and construct highways extend to the blocking off of a city street?

### Alabama Act 104.

Act 104, General Acts of Alabama 1956, page 148, approved February 9, 1956, was taken almost verbatim from the "Model Controlled-Access Highway Act". The Model Act has also been adopted either in whole or in part by some nineteen other states (Arkansas, Florida, Georgia, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Montana, North Dakota, South Carolina, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, and Wyoming). Highway Research Bound Special Report 26; Expressway Law, pp. 69–75. The Declaration of Policy in the Model Act reads as follows:

"Sec. 1. Declaration of policy. The legislature hereby finds, determines and declares that this act is necessary for the immediate preservation of the public peace, health, and safety, and for the promotion of the general welfare."

The Declaration of Policy in the Alabama Act 104 reads as follows:

"Section 1. It is the declared policy of this State to facilitate the flow of traffic and promote public safety by controlling access to highways included in the National System of Interstate Highways as selected by joint action of the Alabama State Highway Department and the United States Bureau of Public Roads."

Pertinent sections of the Model Act and Alabama's Controlled Access statutes are compared to demonstrate the similarity of the two acts, to wit:

Model Act—Section 3.

"Sec. 3. Authority to establish controlled-access facilities. The highway authorities of the State, counties, cities, towns, and villages, acting alone or in cooperation with each other or with any Federal, State, or local agency or any other State having authority to participate in the construction and maintenance of highways, are hereby authorized to plan, designate, establish, regulate, vacate, alter, improve, maintain, and provide controlled-access facilities for public use wherever such authority or authorities are of the opinion that traffic conditions, present or future, will justify such special facilities: Provided, That within cities and villages such authority shall be subject to such municipal consent as may be provided by law. Said highway authorities of the State, counties, cities, villages, and towns, in addition to the specific powers granted in this act, shall also have and may exercise, relative to controlled-access facilities, any and all additional authority now or hereafter vested in them relative to highways or streets within their respective jurisdictions. Said units may regulate, restrict, or prohibit the use of such controlled-access facilities by the various classes of vehicles or traffic in a manner consistent with section 2 of this act."

Alabama Act—Section 3.

"Section 3. Establishment, designation, alteration, vacation, improvement of; Powers of highway authorities. Be It Further Enacted, That the State Highway Director, acting alone or in cooperation with counties, cities, towns or any Federal, State or local agency, or any other State having authority to participate in the construction and maintenance of highways, is authorized to plan, designate, establish, regulate, vacate, alter, improve, maintain, and provide controlled access facilities for public use wherever such authority or authorities are of the opinion that traffic conditions, present or future, will justify such special facilities; provided that in the case of designation or vacation such designations or vacations must be approved by the State Highway Director. Said authorities may regulate, restrict, or prohibit the use of such controlled access facilities by the various classes of vehicles or traffic in a manner consistent with Section 2 of this Act."

(Note) It should be noted that the provision for consent of local authorities as contained in Section 3 of the Model Act is not included in the Alabama Act. But we do not have before us any question of the validity, vel non, of our statute by this omission. Sibley v. Odum, 257 Ala. 292(6), 58 So.2d 896.

Model Act—Section 4.

"Sec. 4. * * * No person shall have any right of ingress or egress to, from, or across controlled-access facilities to or from abutting lands, except at such designated points at which access may be permitted, upon such terms and conditions as may be specified from time to time."

Alabama Act—Section 4.

"Section 4. * * * No person shall have any right of ingress or egress to, from or across controlled access facil-

ities to or from abutting lands, except at such designated points at which access may be permitted or service roads provided, upon such terms and conditions as may be specified from time to time.

### Model Act—Section 7.

"Sec. 7. New and existing facilities; grade-crossing eliminations. The highway authority of the State, county, city, town, or village may designate and establish controlled-access highways as new and additional facilities or may designate and establish an existing street or highway as included within a controlled-access facility. *The State or any of its subdivisions shall have authority to provide for the elimination of intersections at grade of controlled-access facilities with existing State and county roads, and city or town or village streets, by grade separation or service road, or by closing off such roads and streets at the right-of-way boundary line of such controlled-access facility;* and after the establishment of any controlled-access facility, no highway or street which is not part of said facility shall intersect the same at grade. No city, town, or village street, county or State highway, or other public way shall be opened into or connected with any such controlled-access facility without the consent and previous approval of the highway authority in the State, county, city, town, or village having jurisdiction over such controlled-access facility. Such consent and approval shall be given only if the public interest shall be served thereby." (Emphasis supplied.)

### Alabama Act—Section 6.

"Section 6. New and existing facilities; grade crossing elimination. Be It Further Enacted, *That the State or any of its subdivisions shall have authority to provide for the elimination of intersections at grade of controlled access facilities with existing State or county*

*roads, and city or town streets by grade separation of service road or by closing off such roads and streets at the right-of-way boundary line of such controlled access facility;* and after the establishment of any controlled access facility, no highway or street which is not a part of said facility shall intersect the same at grade. No city or town street, county or State highway, or other public way shall be opened into or connected with any such controlled access facility without the consent and previous approval of the Highway Director. Provided, however, that the Highway Director may, whenever he determines that traffic is not thereby impaired, authorize the continued intersection at grade of lightly traveled entrances and minor public roads as ways of access to controlled access facilities in sparsely populated areas. (Emphasis supplied.)

### Model Act—Section 9.

"Sec. 9. Local service roads. In connection with the development of any controlled-access facility the State, county, city, town or village highway authorities are authorized to plan, designate, establish, use, regulate, alter, improve, maintain, and vacate local service roads and streets or to designate as local service roads and streets any existing road or street, and to exercise jurisdiction over service roads in the same manner as is authorized over controlled-access facilities under the terms of this act, if, in their opinion, such local service roads and streets are necessary or desirable. Such local service roads or streets shall be of appropriate design, and shall be separated from the controlled-access facility proper by means of all devices designated as necessary or desirable by the proper authority."

### Alabama Act—Section 8.

"Section 8. Extent of authority with respect to local service streets and

roads. Be It Further Enacted, That in connection with the development of any controlled access facility, the State Highway Director is authorized to plan, designate, establish, use, regulate, alter, improve, maintain, and vacate local service roads and streets or to designate as local service roads and streets any existing road or street, if in his opinion such local service roads and streets are necessary or desirable. Such local service roads or streets shall be of appropriate design and shall be separated from the controlled access facility proper by means of all devices designated as necessary or desirable by the proper authority."

■ Our research discloses that the courts generally have upheld the conduct of the road building authority when acting under similar laws where the conduct of the authority is not tainted with corruption, arbitrariness, or caprice. We will review some of these cases.

In City of Lakewood v. Thormyer, Ohio Com.Pl.1958, 154 N.E.2d 777, 783, an action by the City of Lakewood against the Highway Director, the Court construed the Highway Director's power and authority to relocate a highway through the City of Lakewood:

"When the intended use is public, the determination of the necessity for, and the proper extent of, the taking of private property under the power of eminent domain are primary legislative or political questions * * *; they are not judicial questions to be determined by the courts. Other determinations which are political and not judicial ones are: the utility of the proposed improvement, its expediency, and the selection of a particular location, line or route. These being political questions, the Legislature may determine them itself, or it may, and usually does, delegate this power of determination to some subordinate agency * * *.

"* * * In 39 C.J.S. Highways § 97, p. 1033, it is said: 'In the exercise of the police power, the state may change or alter public highways. The power of the state in this respect is vested in the legislature, which may exercise it either directly or by authorizing the making of the change or alteration by some appropriate agency.'"

■ In Handlan-Buck Co. v. State Highway Commission of Missouri, Mo.1958, 315 S.W.2d 219, 223, the Court held that: "The power of establishing limited access state highways is of statewide concern. Its exercise affects the safety of all persons traveling upon the roads of this state. The state police power is in such a case superior to that of a municipality."

In Lehman v. Iowa State Highway Commission, 1959, 251 Iowa 77, 99 N.W.2d 404, the Court in construing a located access provision similar to the Model Act held that the designation of a limited access highway is a necessary police power.

The Delaware Court has given a liberal interpretation to its highway law as regards the discretionary power of the Highway Department in constructing highways through municipalities even though the statute requires consent of the municipality in certain instances. See Campbell v. Commissioners of Town of Bethany Beach, Del. 1958, 139 A.2d 493, 498; and Piekarski v. Smith, Del.1959, 153 A.2d 587.

The Missouri Supreme Court has ruled that the courts cannot enjoin highway construction where the Highway Commission has acted within its authority. The facts in the case of State ex rel. State Highway Comm. v. Elliott, Mo.1959, 326 S.W.2d 745, 750, were that a village sought to enjoin State construction, which had already begun, of an interstate route which would obstruct some of its public streets. The Village of Claycomo, Missouri has within its limits five public streets extending north and south. The east-west controlled access

interstate route was to cut off three of these streets; grade separation structures were being built at the other two. The village alleged that the three dead-ended streets would be rendered useless as streets connecting the northern and southern parts of the village; that the action of the Commission in not providing overpasses or underpasses was "arbitrary, capricious and unreasonable" and that fire protection facilities would be imposed for many residents. The Highway Commission alleged that to provide grade separations for the remaining three streets would cost in excess of $500,000 while saving only one or two blocks of travel either east or west for the residents of Claycomo to reach the two streets with grade separations. The Missouri Supreme Court held that this was not a case where the State Highway Commission has arbitrarily deprived one portion of the village of all access to another portion. The Court pointed out that there was no allegation of fact showing that the obstruction of access from one part of the village to the other imposed unreasonable burdens on the traveling public, or that the impairment of fire prevention efficiency was so extreme that the decision of the Commission not to build overpasses amounted to a manifest abuse of power. The Court said that constitutional and statutory powers to locate and design State Highways and to apportion highway funds are expressly and exclusively conferred upon the Commission and that this denies the Court the right, absent an allegation of fact showing bad faith or manifest abuse of authority, to enjoin the Commission in the construction of this highway. To hold otherwise, the Court concluded, would amount to judicial usurpation of an exclusively legislative function clearly beyond the powers of courts. State ex rel. State Highway Comm. v. Elliott, supra.

The year before the Missouri Court had held in Handlan-Buck Co. v. State Highway Commission of Missouri, supra, that the constitutional provision authorizing the State Highway Commission to limit access to the highways where public interest and safety may require is a grant of police power.

In the light of the considered cases, we are constrained to hold that the record before us fails to show manifest abuse of authority or arbitrariness of appellant as would authorize the Court to invade this "quasi-legislative" domain. The Court is not a road builder and unless the highway director is guilty of the misconduct referred to hereinabove—which is not shown —the Court acts beyond its jurisdiction in intervening.

We must, therefore, conclude that the learned trial court erred to a reversal in granting the injunction.

Reversed and remanded.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.