413 So.2d 391 (1981)
Jan Elizabeth DeSTAFNEY, individually and as the mother and custodial parent of Joseph Michael DeStafney
v.
The UNIVERSITY OF ALABAMA, et al.
80-431.
Supreme Court of Alabama.
September 4, 1981.
On Rehearing February 5, 1982.
Second Rehearing Denied May 21, 1982.
Jack Drake of Drake & Pierce, University, for appellant.
Paul E. Skidmore, University, for appellee the University of Alabama and President David Mathews.
James J. Jenkins, of Phelps, Owens, Jenkins, Gibson & Fowler, Tuscaloosa, for appellee Gabrielle Martinez.
PER CURIAM.
Affirmed on the authority of Gill v. Sewell, 356 So.2d 1196 (Ala.1978), and Milton v. Espey, 356 So.2d 1201 (Ala.1978).
AFFIRMED.
TORBERT, C. J., and MADDOX and ALMON, JJ., concur.
EMBRY, BEATTY and ADAMS, JJ., concur in the result.
FAULKNER and JONES, JJ., concur in part and dissent in part.
SHORES, J., not sitting.
JONES, Justice (concurring in part and dissenting in part):
I concur with the per curiam summary affirmance on the trial court's order of dismissal with respect to Defendants University of Alabama and Dr. David Mathews. I dissent as to the dismissal of Defendant Gabrielle Martinez on the ground that I do not construe § 14 of our State Constitution as affording immunity from suit to an employee of the State for tortious injury.
FAULKNER, J., concurs.

On Application for Rehearing
JONES, Justice.
Appellant's brief in support of rehearing contains the following succinct "Statement of the Case":
"Three-year old Michael DeStafney was placed on a piece of playground equipment at Rose Towers Learning Center by Defendant-Appellee Gabrielle Martinez. Michael fell, severely injuring his jaw. His injuries may be permanent in *392 nature and as he grows older he may be forced to undergo several surgical operations to correct the damage done.
"At the time of his injury Michael was a student at Rose Towers Learning Center, a day care center operated by the University of Alabama at Tuscaloosa. Defendant Martinez was employed as an Aide at the Center.
"Michael's mother Jan DeStafney filed suit against Gabrielle Martinez, individually, the University of Alabama and David Mathews, as President of the University of Alabama.[[1]] The trial court granted summary judgment for all Defendants citing Gill v. Sewell, 356 So.2d 1196 ([Ala.] 1980), and Milton v. Espey, 356 So.2d 1201 ([Ala.] 1978).
"On September 4, 1981, this Court affirmed the Circuit Court's grant of summary judgment per curiam without opinion on the authority of Gill v. Sewell, supra, and Milton v. Espey, supra. Three members of this Court concurred in the opinion, three `concurred in the result,' two concurred as to the University and David Mathews but dissented as to Martinez and one did not sit."
This Court preliminarily granted rehearing as to the individual defendant, Gabrielle Martinez; withdrew submission; and ordered the case set for oral argument on October 19, 1981.
Upon reconsideration of the briefs and arguments of counsel, we reaffirm our agreement with the trial court's order granting summary judgment as to the University of Alabama and David Mathews, as President of the University of Alabama. We grant rehearing and reverse and remand as to the defendant Gabrielle Martinez, individually.
Upon further study and re-evaluation of Gill v. Sewell, supra, and Milton v. Espey, supra, we are of the opinion that these cases do not mandate our rejection of the Plaintiffs' claims for tortious injury against the individual employee of the University of Alabama. We hold, therefore, that the defense of sovereign immunity afforded by Ala.Const. 1901, § 14, to the University of Alabama and its President, Dr. Mathews, does not extend to Gabrielle Martinez as an employee whose alleged tortious act is the basis of the claim.
We must recognize at the outset that our cases have interpreted § 14 as affording absolute immunity to some State officials, as well as to the State itself, and extending a qualified immunity to others. This accords with the majority rule with respect to public officials and employees, even in those states that have no comparable constitutional immunity. See, for example, Procunier v. Navarette, 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1977). No Alabama case, however, has ever held that a State employee may never be sued for simple negligence committed in the line and scope of his or her employment. Indeed, significantly, neither Gill nor Milton so held.
Our review of the cases, keeping in mind that claimants have traditionally sought to circumvent the absolutism of § 14 by naming individual State officials and employees as parties defendant, puts the issue in perspective. As early as 1907 (§ 14, though under a different section number, first appeared in the 1875 State Constitution), this Court in Elmore v. Fields, 153 Ala. 345, 45 So. 66 (1907), addressed employee immunity:
"It must stand to reason that no person can commit a wrong upon the property or person of another, and escape liability, upon the theory that he was acting for and in the name of the government which is immune from suit at the instance of one of her subjects." Elmore, 153 Ala. at 350, 45 So. 66.
The Elmore view was restated in St. Clair County v. Town of Riverside, 272 Ala. 294, 128 So.2d 333 (1961):
"`Nor does the immunity of the state from suit relieve an officer of the state from responsibility when he acts tortiously on the rights of an individual.... An officer who acts illegally is not acting as *393 an officer, but stands in the same light as any other trespasser.'" St. Clair County, 272 Ala. at 296, 128 So.2d 333.
Six years later Wallace v. Board of Education of Montgomery, 280 Ala. 635, 197 So.2d 428 (1967), cited with approval the St. Clair County language quoted above.
Then, in Aland v. Graham, 287 Ala. 226, 250 So.2d 677 (1971), where the Plaintiff claimed a right of way through a public park, the Court held the action was barred by § 14 as not falling within any of the four recognized exceptions to § 14:
1. Actions brought to compel State officials to perform their legal duties;
2. Actions brought to enjoin State officials from enforcing an unconstitutional law;
3. Actions to compel State officials to perform ministerial acts; and
4. Actions brought under the Declaratory Judgments Act.[2]
In Aland, where the issue arose in a non-tort context, the Court rejected claimant's attempt to circumvent § 14 by naming several State officials as parties defendant. The Aland Court quoted with approval the rationale of Southall v. Stricos Corporation, 275 Ala. 156, 153 So.2d 234 (1963), which case held:
"... Section 14 not only prevents a suit against the State, but against its officers and agents in their official capacity, when a result favorable to the plaintiff or complainant would directly affect a contract or property right of the State." Aland, 287 Ala. at 229.
In summary, our cases, as well as the case law of other State immunity jurisdictions, adhere to the view that the State has an interest such as will prohibit suit against the State official or employee where the action is in effect against the State. A good statement of this rule appears in Ford Motor Company v. Department of Treasury of Indiana, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945):
"[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." Ford Motor Co., 323 U.S. at 464, 65 S.Ct. at 350.
Aland left unchanged, however, the tort liability rule of Elmore and St. Clair County. The tort liability rule with respect to public officials and employees, as proposed by the Restatement (Second) of Torts, § 895D, Public Officers (1974), is as follows:
"(1) Except as provided in this Section a public officer is not immune from tort liability.
"(2) A public officer acting within the general scope of his authority is immune from tort liability for an act or omission involving the exercise of a judicial or legislative function.
"(3) A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if
"(a) he is immune because engaged in the exercise of a discretionary function,
"(b) he is privileged and does not exceed or abuse the privilege, or
"(c) his conduct was not tortious because he was not negligent in the performance of his responsibility."
Generally speaking, our own case law development accords with the Restatement's Comment to this Section, which states, in part:
"a. History. The origin of the immunity of public officers and employees is found in that of the king (see § 895A, Comment a), which was extended to protect the servants who were carrying out his commands. The development of the parliamentary system in England gradually *394 substituted the idea that, while the king himself could not be charged with wrongdoing, his ministers were personally responsible when they acted illegally. The rules on immunity from liability in tort that were finally worked out by the common law were essentially a compromise between these two positions."
We find the holdings and rationale of Milton and Gill consistent with the general rule of our cases, as well as with the overall concept of tort liability expressed in § 895D of the Restatement.
Gill, addressing that aspect of the suit against certain named defendants in their official capacities, states:
"... Such a suit is barred by Section 14 of the Alabama Constitution. Gill fails to bring the suit within the categories recognized in Aland and Unzicker." Gill, 356 So.2d at 1198.
As to the only State officer-defendant sued in his individual capacity, Gill concludes:
"... Section 14 does not necessarily immunize State officers and agents from individual civil liability. [Cites omitted.]
"There is no allegation in the complaint that J. C. Locke exceeded the authority given him by statute. The complaint at best alleges that he negligently performed his statutory duty. [Cite omitted.] Acting pursuant to such statutory authority, J. C. Locke acted as the State and the claim is barred by Section 14 of the Constitution." Gill, 356 So.2d at 1198.
Unquestionably, Gill falls squarely within § 895D(3)(a) of the Restatement.
Milton, released the same date as Gill, likewise upheld the dismissal of those statements of the claim based upon the State employee's exercise of discretionary functions, but remanded the cause for further proceedings with respect to the tort claim of fraud.
Milton's rationale is particularly pertinent:
"The issue is whether this is a suit against the State, which is barred by Section 14 of the Constitution of Alabama. Milton states the issue is whether a suit can be maintained against an agent of the University of Alabama, when the University is admittedly constitutionally immune from suit. [Cites omitted.]
"Section 14 of the Constitution not only prevents a suit against the State, but against its officers and agents in their official capacity when a result favorable to the plaintiff would directly affect a contract or property right of the State. [Cites omitted.] The prohibition of Section 14 cannot be circumvented by suing the official or agent individually. [Cites omitted.]
"In determining whether an action against a State officer or agent is in fact a suit against the State, the court considers the nature of the suit or the relief demanded. [Cites omitted.]
"There is no dispute that in employing Milton, Espey was acting in his official capacity as an agent of the University. Milton admits this. Espey was merely the conduit through which the University contracted with Milton. Thus, a suit seeking money damages for breach of contract, although nominally against Espey individually, comes within the prohibition of Section 14 as a suit against the State. Milton's contract was in fact with the University of Alabama. [Cites omitted.]
"Thus, Counts One, Two, Four and Five are barred by Section 14 and summary judgment was appropriately granted as to these counts.
"Count Three which alleges fraud presents an entirely different situation....
"[Aland v. Graham, 287 Ala. 226, 250 So.2d 677 (1971)] does not purport to list all classes of cases not within the prohibition of Section 14. In Unzicker v. State, 346 So.2d 931 (Ala.1977), this court observed that:
"`While the State itself may not be made a party to such action, it does not necessarily follow that its officers, Ray Bass, Claude Kelley and Governor Wallace, *395 in their respective capacities, are also immune. The essence of plaintiffs' complaint is that these officers of the State acted fraudulently, in bad faith, beyond their authority, or acted under a mistaken interpretation of the law. Such allegations bring this case within those not protected by Section 14 of the Constitution.' [Cites omitted.]
Section 14 does not necessarily immunize State officers or agents from individual civil liability. [Cites omitted.]
"The claim asserted in Count Three is fraud, allegedly committed by Espey while acting outside his authority and contrary to the rules and regulations of the University of Alabama. The rules and regulations of the University are not part of the record. What powers and duties Espey had as Director of the Ferguson Center we cannot guess. However, from the record we cannot say that Milton has not raised a material issue of fact or that Espey is entitled to judgment in his favor as a matter of law." Milton, 356 So.2d at 1202, 1203.
Here, again, the tort concept of the Restatement is fully preserved. Milton`s statement of the claim based upon fraud is not covered by the exceptions listed under § 895D(3); thus, the Restatement's language, "... a public officer is not immune from tort liability," is applicable.
In the instant case, then, the dispositive issue is twofold: 1) Is the suit against the individual State employee, in effect, a suit against the State? and 2) Under the allegations of tortious injury, is the employee defendant entitled to substantive immunity because she was engaged in the exercise of a discretionary public function?
Clearly, under the guidelines of Gill and Milton, a claim for personal injury based upon the alleged negligent conduct of a State employee, even when committed in the line and scope of employment, is not within the ambit of § 14's protection. Such a claim, by virtue of its nature and the relief demanded, in no way seeks to circumvent the prohibition of § 14. Any state interest affected by the suit is far too incidental to supply the requisite nexus for extension of constitutional immunity to the individual employee defendant. This suit, and the legal effects incident thereto, are strictly between the named parties plaintiff and the individual defendant. In no sense can it be said that Gabrielle Martinez is a mere nominal party defendant.
This is not to say, however, that every act or performance of duty by a state official or employee, by virtue of its characterization as negligence, necessarily falls outside the immunity doctrine. Even absent the requisite identity between the State and the state official or employee defendant to invoke absolute immunity, the Restatement`s doctrine of substantive immunity may yet be invoked if the official or employee 1) is engaged in the exercise of a discretionary function; 2) is privileged and does not exceed or abuse the privilege; or 3) is not negligent in the performance of his responsibility.
As the Restatement`s Comment f to § 895D suggests:
"There is no single test [for application by the courts in determining whether the state employee was engaged in exercising a discretionary function or, if he was, how extensively this circumstance should work in his defense]. Attempts to solve the problem by setting forth a precise definition of the term, discretionary function, have been less than helpful. The expression is not only a standard (see Comment d); it is also a legal conclusion whose purport is only somewhat incidentally related to the definitions of the two words composing it. Instead of looking at the dictionary, therefore, the court must weigh numerous factors and make a measured decision, on the basis of that assessment, both (1) whether the particular activity should be characterized as a discretionary function, and (2) whether the officer engaged in that activity should be entitled to a full or limited immunity, a privilege (to act either on the basis of reasonable belief or of the actual facts), or a finding that he was not negligent."
*396 Comment f then discusses seven separate and several factors which may be helpful in determining what is a discretionary function and its consequences. While each of these factors is worthy of consideration, particularly in deciding the more difficult cases, they serve merely to demonstrate that the averments of the instant claims bring this case within those which are protected neither by Section 14 nor by the broader substantive immunity doctrine of the Restatement. See, also, Comment b, § 895D.
Although we accede to the proposition that, under certain circumstances, public policy considerations afford immunity to entities not otherwise constitutionally protected,[3] under the factual averments of the instant case, we find that no valid public policy will be served by immunizing from liability a public employee whose tortious conduct results in personal injury to another.
We affirm as to the granting of summary judgment on behalf of the University of Alabama and David Mathews, as president of the University of Alabama. We reverse as to the granting of summary judgment on behalf of the individual Defendant Gabrielle Martinez; and we remand the cause for further proceedings consistent with this opinion.
APPLICATION FOR REHEARING OVERRULED IN PART AND GRANTED IN PART; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
FAULKNER, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C. J., and MADDOX, J., concur in the result.
NOTES
[1] Both the mother and her son are Plaintiffs.
[2] Arguably, under appropriate circumstances, these exceptions may now be enlarged to include inverse condemnation (Ex parte Carter, 395 So.2d 65 (Ala.1981)). While Unzicker v. State, 346 So.2d 931 (Ala. 1977), may be interpreted as adding yet another, the bad faith conduct addressed in Unzicker falls outside the non-tort context of the exceptions outlined in Aland.
[3] For a case applying substantive immunity to a municipality, see Rich v. City of Mobile, 410 So.2d 385 (Ala. 1982).