This is an appeal from a summary judgment entered in a medical malpractice action in favor of Dr. A.G. Arnold and against James Carlton Smith ("Smith"), the administrator of the estate of Derryl Adus Smith ("Derryl"), in the Circuit Court of *Page 874 
Jefferson County.[1] The question presented is whether a psychiatrist employed by the State is protected from tort liability by the doctrine of substantive immunity in an action based on recommendations, made in his official capacity, concerning the care and treatment of a patient confined in a State mental health facility.
On February 20, 1978, Derryl was involuntarily committed by the Probate Court of Geneva County to the custody of the Department of Mental Health and Mental Retardation ("the Department"). That court ordered Derryl's commitment because it found that he posed "a real and present threat of substantial harm to himself or to others." Derryl was eventually placed at the Thomasville Adult Adjustment Center ("the Center"), a minimum-security facility operated by the Department.
Dr. Arnold was an attending psychiatrist at Searcy Hospital, another mental health facility operated by the Department. Part of Dr. Arnold's duties included acting as a consulting psychiatrist to the Center. Dr. Arnold traveled to the Center once or twice a month and examined patients that the full-time staff at the Center believed warranted his attention. During these visits Dr. Arnold would examine those patients and make recommendations to the staff regarding their care and treatment. The staff was not required to follow Dr. Arnold's recommendations, but, according to the deposition of Dr. Margaret Henry, a supervisor at the Center, it routinely did so. Those examinations and recommendations were Dr. Arnold's only involvement with the patients at the Center. He was not involved in formulating treatment plans for the patients, nor did he participate in their day-to-day care.
Dr. Arnold examined Derryl approximately six times during his stay at the Center, with the last examination taking place on October 28, 1981. Following that examination, Dr. Arnold noted that Derryl's condition had deteriorated and that his behavior was "out of control" 50 to 60 percent of the time. Dr. Arnold felt the programs and facilities at the Center were not meeting Derryl's needs and recommended that he be transferred to the state mental hospital of origin. Dr. Arnold also recommended that Derryl be taken off all psychotropic medications on a trial basis, so that a more accurate re-evaluation of his underlying psychopathology could be performed.
On November 15, 1981, while still a patient at the Center, Derryl became highly agitated after a telephone conversation with his mother. He became violent and threatened to kill himself. Pursuant to the Center's standard procedures, Derryl's clothing was removed and he was placed in a pair of pajama bottoms. All personal effects with which he could harm himself were confiscated, and he was placed in a seclusion room to allow him to calm down and to protect himself, the staff, and other patients from harm. Derryl was placed in the seclusion room at 8:30 a.m., and the appropriate staff members were contacted to evaluate him. Von Gibson, an employee at the Center, checked on Derryl at 8:45 a.m. and again at 9:15 a.m. At 9:15 Gibson found that Derryl had hanged himself. All attempts at resuscitation were unsuccessful, and Dr. Henry pronounced Derryl dead.
On November 14, 1984, Smith filed a complaint in the Circuit Court of Jefferson County against numerous defendants, including Dr. Arnold. In his complaint, Smith alleged that the defendants had been negligent in diagnosing and treating Derryl and in failing to implement adequate suicide prevention measures and that their negligence had been the proximate cause of Derryl's death. On September 27, 1988, Dr. Arnold filed a motion for summary judgment. That motion was supported by a brief and an affidavit. Dr. Arnold contended that he was entitled to summary judgment because he was not involved in Derryl's day-to-day care, had not participated in the decision to seclude him, and *Page 875 
was entitled to substantive immunity. On February 27, 1989, the court granted Dr. Arnold's motion, holding that he was entitled to substantive immunity in accordance with this Court's decision in Barnes v. Dale, 530 So.2d 770 (Ala. 1988). It is from the resulting summary judgment that Smith appeals.
Generally, the State of Alabama and its officers and agents cannot be made defendants in any court. See Ala. Const., art. I, § 14. This absolute or constitutional immunity extends to state officers when the action filed is, in effect, against the State. DeStafney v. University of Alabama, 413 So.2d 391, 393
(Ala. 1982). However, this absolute immunity does not always shield state officers from liability for negligent acts, even when committed in the line and scope of their employment.Hickman v. Dothan City Bd. of Educ., 421 So.2d 1257, 1259 (Ala. 1982). The lack of absolute immunity does not, however, mean that state officials are amenable to suit for any act or omission that could be characterized as negligent. This Court stated in DeStafney, supra:
 "This is not to say, however, that every act or performance of duty by a state official or employee, by virtue of its characterization as negligence, necessarily falls outside the immunity doctrine. Even absent the requisite identity between the State and the state official or employee defendant to invoke absolute immunity, the Restatement's doctrine of substantive immunity may yet be invoked if the official or employee 1) is engaged in the exercise of a discretionary function; 2) is privileged and does not exceed or abuse the privilege; or 3) is not negligent in the performance of his responsibility."
DeStafney, supra, at 395.
In his order granting Dr. Arnold's motion for summary judgment, the trial judge ruled that he was involved in the exercise of a discretionary function when acting as a psychiatric consultant to the Center. To determine the propriety of that order, this Court must decide if Dr. Arnold was, in fact, exercising a discretionary function when he made recommendations concerning Derryl's care. If he was, then the first test listed in DeStafney would operate to shield him from suit by Smith.
As noted in numerous decisions by this Court, the discretionary function standard is often difficult to interpret. See Barnes v. Dale, 530 So.2d 770 (Ala. 1988);Hickman, supra; Bell v. Chisom, 421 So.2d 1239 (Ala. 1982);DeStafney, supra. Two of those cases clearly illustrate the conflicting policy considerations the courts must apply. InDeStafney this Court examined the functions performed by a state-employed day care worker who was sued in her individual capacity and it rejected her claim of immunity. In that case, the day care worker's duties required the exercise of due care rather than decision making and therefore could not be deemed discretionary. In Barnes v. Dale, a case similar in many respects to the one presently before the Court, the administrator of a decedent's estate brought a wrongful death action against employees of a state mental health facility, alleging negligence and wanton treatment in the release of a patient who shot and killed the plaintiff's decedent after his release. In Barnes, this Court held that the employees were entitled to substantive immunity:
 "The function that these defendants and those in similar positions perform in the mental health facilities of this state is of urgent importance to those civilly committed, the families of those committed, and the citizens of Alabama. Alcoholism and substance abuse are enigmas that frustrate the lofty aims of life itself and which only qualified professionals, such as the defendants, are equipped to solve."
Barnes, supra, at 784. In recognition of the fact that the very nature of the mental health profession involves discretion and difficult decision-making, this Court held that the defendants were performing a discretionary function and were therefore entitled to substantive immunity. Barnes, supra, at 785.
These cases clearly illustrate the ministerial-discretionary dichotomy that is crucial *Page 876 
to the resolution of cases involving claims of discretionary function immunity. Comment h. to § 895D, Restatement (Second)of Torts (1979), describes "ministerial acts" as those involving "[l]ess in the way of personal decision or judgment or [in which] the matter for which judgment is required has little bearing of importance upon the validity of the act," and states that "[m]inisterial acts are those done by officers and employees who are required to carry out the orders of others or to administer the law with little choice as to when, where, how, or under what circumstances their acts are to be done." Conversely, "discretionary acts" are defined as follows byBlack's Law Dictionary 419 (5th ed. 1979): "Those acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take and, if there is [a] clearly defined rule, such would eliminate discretion. . . . One which requires exercise in judgment and choice and involves what is just and proper under the circumstances."
Smith urges this Court to limit the application of the substantive immunity doctrine as it is set forth in Barnes,supra. He contends that that case limits the immunity extended to State-employed mental health professionals to actions arising out of their decisions to admit or discharge patients. Although decisions concerning the existence of substantive immunity must necessarily turn on the circumstances of each case, we find Smith's interpretation of Barnes to be overly restrictive. It was not this Court's intention to limit the application of substantive immunity to decisions of a certain class. Instead, the courts must focus on the process employed to arrive at the decision. In this case, we find that the decisions and recommendations made by Dr. Arnold concerning Derryl's care involved the exercise of his professional judgment and discretion. Exposure to liability for such decisions, which are made on the State's behalf, would unduly hamper the decision-making process and impose undesirable shackles on the agencies of government.
For these reasons, Dr. Arnold was entitled to the shield of substantive immunity from civil liability. The judgment is therefore affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS, and STEAGALL, JJ., concur.
[1] Smith's complaint named numerous other employees of the Alabama Department of Mental Health and Mental Retardation as defendants. However, this appeal involves only Smith's allegations against Dr. Arnold.