The plaintiff, Carol Hayes, by and through her next friend and mother, Dovie Hayes, appeals from a summary judgment for the defendant, Dr. Lawrence Walters, in this action seeking damages for negligent and wanton supervision. We affirm.
Hayes, while a student at Oak Park Middle School in Decatur, Alabama, was injured during a gymnastics class when she fell from a pommel horse.[1] Dr. Walters is the principal of the school. At the time of the accident, Hayes was under the direct supervision of Pat Gray, a certified physical education teacher. Dr. Walters was not present at the time of the accident. Hayes alleged that Dr. Walters was negligent or wanton in failing to personally develop certain safety procedures for using a pommel horse. The sole issue presented may be characterized as whether Dr. Walters's indirect supervisory responsibilities for Hayes's gymnastics class involved the performance of a discretionary function, so as to render him immune from civil liability under the doctrine of discretionary function immunity, or whether, as Hayes contends, Dr. Walters's responsibilities as principal were ministerial in nature, so that the nonperformance of them could subject him to liability for her injuries. See Nance v. Matthews,622 So.2d 297 (Ala. 1993).
The undisputed material facts in this case are as follows: The Decatur Board of Education ("the Board") has a written policy stating that "[i]t shall be the responsibility of the principal with the help and cooperation of the staff to develop regulations and procedures that will reasonably provide for the safety of all students." In response to this policy directive, Dr. Walters delegated to Pat Gray, a certified physical education teacher, the primary responsibility for supervising and teaching Hayes's gymnastics class. Walters met with the school's physical education teachers, including Gray, at the beginning of each school year and stressed to them the importance of safety in the classroom. He also met periodically with the physical education teachers, including Gray, during each school year to again emphasize the importance of safety. In addition, Dr. Walters periodically monitored Hayes's gymnastics class and he reviewed Gray's lesson plans on a regular basis. Finally, Gray testified that she had been furnished with materials from the State Department of Education that set out certain procedures for teaching gymnastics.
Hayes contends that Dr. Walters had no discretion to abdicate his supervisory responsibilities with regard to her use of the pommel horse. We agree; however, the dispositive question is whether Dr. Walters retained the discretion to determine the manner in which he would exercise those responsibilities. The Board's policy directive required that Dr. Walters, "with the help and cooperation of [his] staff," develop procedures that would reasonably provide for the safety of all of the school's students. Thus, we think that the Board contemplated that principals, such as Dr. Walters, in exercising their supervisory responsibilities, could rely on their physical education teachers to help ensure the children's safety. We do not view the Board's policy directive as placing on Dr. Walters the personal responsibility to micro-manage each of the classes at his school. To the contrary, given the limited time available to a school principal and the administrative nature of a principal's job, we can only conclude that the Board intended for Walters to have the discretion to determine whether he, or a certified physical education teacher, would bear the primary responsibility for developing and implementing safe gymnastics *Page 560 
procedures. The record indicates that Walters chose to fulfill his responsibilities and, thus, to comply with the Board's directive, by emphasizing safety to Gray, a certified physical education teacher who supposedly had superior knowledge of the intricacies and hazards of gymnastics, and reviewing Gray's lesson plans.
Recently, in Nance v. Matthews, supra, we noted:
 "We have held that in determining whether an employee makes difficult decisions and exercises discretion 'the courts must focus on the process employed to arrive at the decision.' Smith v. Arnold, 564 So.2d 873, 876 (Ala. 1990). Courts must make this assessment on a case-by-case basis. Grant v. Davis, 537 So.2d 7, 8 (Ala. 1988).
 "The distinction between discretionary functions and ministerial ones is often elusive and difficult to make. However, this Court has made the following comments:
 " ' "[M]inisterial acts" [are] those involving "[l]ess in the way of personal decision or judgment or [in which] the matter for which judgment is required has little bearing of importance upon the validity of the act". . . . "[M]inisterial acts are those done by officers and employees who are required to carry out the orders of others or to administer the law with little choice as to when, where, how, or under what circumstances their acts are to be done." [Citing Restatement (Second) of Torts, § 895D, cmt. f (1979).] Conversely, "discretionary acts" are defined as follows by Black's Law Dictionary
419 (5th ed. 1979): " 'Those acts [as to which] there is no hard and fast rule as to [the] course of conduct that one must or must not take and, if there is [a] clearly defined rule, such would eliminate discretion. . . . One which requires exercise in judgment and choice and involves what is just and proper under the circumstances.' " ' "
"Smith, 564 So.2d at 876.
 "Distinguishing between these functions on the basis of definitions alone, however, is not helpful. We have held that '[t]he problem is not to define terms like 'discretionary' . . . but to make a pragmatic assessment of what, if any, degree of immunity is necessary to enable the particular governmental function to be effectively performed.' Bell v. Chisom, 421 So.2d 1239, 1241 (Ala. 1982)."
After carefully reviewing the record, as well as the briefs of the parties, we hold that Dr. Walters's supervisory responsibilities with regard to Hayes's gymnastics class involved the performance of a protected discretionary function, see Nance v. Matthews, supra; Coyle v. Harper,622 So.2d 302 (Ala. 1993); Kroger v. Davis, 622 So.2d 303 (Ala. 1993), and, therefore, that the summary judgment was proper. Rule 56, Ala.R.Civ.P.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] A "pommel horse" is defined in Webster's Ninth New Collegiate Dictionary (1991) as "a gymnastics apparatus for swinging and balancing feats that consists of a padded rectangular or cylindrical form with two pommels on the tip and that is supported in a horizontal position above the floor."