SEE, Justice
(dissenting).
I respectfully dissent. I believe that the defendant, Russell Hudson, is entitled to State-agent immunity as to all claims.
In 1994, Russell Hudson was the purchasing foreman in the renovation department of the Mobile County School System. His responsibilities included receiving bids from vendors on, and materials about, prospective and ongoing projects; reviewing those bids; making recommendations to the school board as to the bids; executing purchase orders; forwarding project materials to site foremen and other appropriate people; and ensuring that bidders met minimum bid specifications before the school system awarded a contract for a renovation project. As purchasing foreman, Hudson’s involvement with a project ended once the county board of education awarded the contract and the purchase order was forwarded by the school system to the vendor.
On December 12, 1997, Duane Haston, a Vigor High School student, was injured when a set of bleachers purchased while Hudson was purchasing foreman fell on him in the school gym. Haston, by and through his father and next friend Duane Haston, Sr., sued Russell Hudson and others alleging, among other claims, that Hudson had negligently inspected and maintained the bleachers at Vigor High School.
Hudson argues in his mandamus petition that he is entitled to State-agent immunity because, he says, all of his actions as purchasing foreman for the Mobile County School System are protected discretionary functions subject to immunity. Haston responds that Hudson’s duties are ministerial and, therefore, that Haston is not entitled to State-agent or discretionary-function immunity. He argues that Hudson’s duties specifically included passing along to the proper people in the school system a maintenance manual for the bleachers that Hudson’s office allegedly received from Garner & Associates, Inc., the company that installed the bleachers, and that that duty is ministerial. Haston alleges that Hudson failed to carry out this allegedly ministerial duty by failing to forward the manual, that this failure caused the bleachers not to be inspected and not to be properly maintained, and *1122 that Hudson’s alleged failure to forward the manual constitutes negligent or wanton behavior, making Hudson liable to Ha-ston.
The majority “decline[s] the parties’ invitation to address the issues under the dichotomy of ministerial versus discretionary functions,” 866 So.2d at 1117, and instead “recast[s] this issue,” 866 So.2d at 1118, using the vocabulary of Ex parte Cranman, which “suggested certain categories of State-agent action where agents are immune in the exercise of their judgment.” 866 So.2d at 1117. In Cranman, “the [State-employed] physicians argue[d] that decision-making exercised by a physician in treating a patient should be entitled to immunity because ... such decision-making inherently involves the utmost discretion.... ” 792 So.2d at 406. The Cranman Court rejected the physicians’ argument and held that although the physicians’ work involved the exercise of judgment, the physicians did not exercise judgment “within any category of conduct recognized by the restated rule as immune.” 792 So.2d at 406.
In this case, the majority holds that Hudson’s duties as purchasing foreman “are comparable to the activities referred to in Cranman as a state agent’s ‘exercising his or her judgment ... [in] ... allocating resources [or] negotiating contracts.’ ” 866 So.2d 1119 (quoting Cranman, 792 So.2d at 405)(alterations in the main opinion). The majority also holds, however, that “[fjorwarding a maintenance manual does not fall within the parameters of the exercise of judgment described in the preceding illustrative examples set forth in Cranman.” 866 So.2d at 1120.
Thus, the majority effectively creates a two-step Cranman test. To qualify for State-agent immunity, the State-agent, first, must fall within one of the Cranman categories (for example, formulating plans, administering an agency, discharging certain duties);[2] then, second, the specific action complained of must be an action that “fall[s] within the parameters of the exercise of judgment described in the ... illustrative examples set forth in Cran-man.” 866 So.2d at 1120.
I dissented in Cranman because I was concerned that its application would intrude on the constitutional balance of powers embodied in the Constitution of Alabama of 1901.[3] Nonetheless, because the *1123 pre-Cranman discretionary function/ministerial duty test was itself a court-created[4] test, when it became clear that the test set out in Cranman had become the law of Alabama, I ceased dissenting in “Cranman cases.” See Ex parte Mobile County Dep’t of Human Res., 815 So.2d 527, 582 (Ala.2001)(See, J., concurring specially)(“Although I disagreed with the discretionary-immunity rule suggested by the plurality in Ex parte Cranman ... and subsequently adopted by this Court in Ex parte Butts, 775 So.2d 173, at 177-78 (Ala.2000), it is now the law of the State of Alabama. I therefore concur.”). When the Cranman plurality stated that a State-agent would be immune when “exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as ... negotiating contracts ...,” 792 So.2d at 405, the plurality appeared to offer the benefit of an easy-to-apply, “bright-line” standard for determining whether an individual was covered by State-agent immunity-
In the case before us today, the majority apparently finds that Hudson is a State-agent, that is, that he meets the first criterion for the application of State-agent immunity, namely, that his job falls sufficiently within the first of the named Cranman categories. 866 So.2d at 1119 (“Hudson’s activities are comparable to the activities referred to in Cranman as a state agent’s ‘exercising his or her judgment ... [in] ... allocating resources [or] negotiating contracts.’”). The majority, nevertheless, holds that “[fjorwarding a maintenance manual does not fall within the parameters of the exercise of judgment described in the ... illustrative examples set forth in Cranman,” 866 So.2d at 1120, thereby holding that Hudson has failed to satisfy the second step in the State-agent immunity test.
The majority cites no authority that defines or delimits what part of the exercise of judgment in “allocating resources [or] negotiating contracts” is entitled to protection, and what part is not entitled to protection.[5] The majority does not articulate *1124 any principle that would permit a State-agent defendant in Hudson’s position or a plaintiff in Haston’s position to discern when an exercise of judgment lies within the “examples” set forth in Cranman, and when an exercise of judgment lies outside those “examples.”[6] The majority does not explain why the judgments Hudson makes when he reviews a bid according to prees-tablished formulas such as statutorily mandated fire codes are entitled to immunity,[7] but the judgments he makes regarding whether and how to distribute the materials he receives and reviews in conjunction with the bid process are not entitled to immunity.
It appears that this Court today comes almost full circle. Before Cranman, the test applied to State actors was whether their acts were discretionary or ministerial. Today, the Court tells us that sovereign immunity applies only to selected State actors, namely, the five court-created categories of actors selected by the Cran-man plurality.[8] For those State actors who fall within one of the five categories, a further test is to be applied, one that sounds suspiciously like the old discretionary function/ministerial duty test. We are to decide whether the specific act for which liability is being sought against the State actor is an exercise of judgment or is ministerial. In my dissent in Cranman, I noted that generally “the discretionary/ministerial determination will dictate whether discretionary-function immunity is available to the State agent or not.” 792 So.2d at 414 (See, J., dissenting). “ ‘A ministerial act envisions direct adherence to a governing rule or standard with a compulsory result. It is performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action.’ ” Ex parte Alabama Dep’t of Forensic Sciences, 709 So.2d 455, 458 (Ala.1997)(quoting 57 Am.Jur.2d Municipal, County, School and State Tort Liability § 120 (1988)). By way of contrast, a discretionary function
“ ‘requires an exercise in judgment and choice as to what is proper.... It involves the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned *1125 conclusions, and acting on them in a way not specifically directed.... A function is discretionary when it devolves to the officer to determine whether he should perform a certain act and, if so, in what particular way.’ ”
709 So.2d at 458 (quoting 5.7 Am.Jur.2d § 119). Thus, I have no objection to stating expressly what I believe was already the law, that to qualify for State-agent immunity the actor against whom liability is being sought must have exercised judgment. However, I must again object to the arbitrary exclusion of State actors from the application of the doctrine.[9]
I noted in Cranman that, “where the officer is expected to exercise judgment, this Court encroaches on executive or legislative powers when it imposes liability on that officer for his decision, thereby imper-missibly affecting the decision-making of a coordinate branch of government.” 792' So.2d 392, 414 (See, J., dissenting). State-agent immunity is intended, in part, to prevent a State agent from being so burdened by legal actions that he is incapable of properly performing his job.
. The theory of the majority decision in this case is that this Court, first, has selected only certain State actors to whom the doctrine of sovereign immunity will apply, and, next, when an action is brought, the trial court will examine each step of a qualified actor’s conduct to determine whether any step was ministerial.[10] If the State agent failed to perform a ministerial step, the alleged failure to perform will subject the State agent to a trial for a jury to decide whether that failure was the cause of an injury. Therefore, contrary to the balancing of interests intended in the constitution, the harm of spending time in litigation is imposed on State actors. See Cranman 792 So.2d at 415-16 (See, J., dissenting)(arguing that the rule announced in Cranman was coun *1126 ter to the “balancing of the policies of §§ 18, 14, and 43, of the Constitution of Alabama of 1901”). In practice, application of this two-part Cranman test as it is being applied today will mean that after sufficient discovery, a well-drafted pleading will survive a motion to dismiss on State-agent immunity grounds because some aspect of the State-agent’s job will always be found to be ministerial; therefore, the agent will not be immune from suit as to that ministerial act, which can then be linked to the injury in much the way Thomas Wolfe links our lives to the London cutpurse’s going unhung.[11]
Hudson argues in his mandamus petition that in his case, “any duty of his which may have been associated with the repair and maintenance of the bleachers would substantially fall within the planning level activities of the bid proposals he was actively involved in preparing on the [school board’s] behalf.” (Petition at 25.) Hudson further argues that “even assuming Mr. Hudson actually received the bleacher maintenance manual and failed to pass it along, his decision not to inspect should not be second guessed in hindsight.... Mr. Hudson’s failure to act here, like the defendants in [Byrd v. Sullivan, 657 So.2d 830 (Ala.1995) ], may be questionable or subject to criticism, but his actions involved his ‘personal deliberations, decisions, and judgments in the performance of [his] job’ as purchasing foreman.” (Petition at 28-29, citing Byrd v. Sullivan, 657 So.2d 830, 883 (Ala.1995) (quoting White v. Birchfield, 582 So.2d 1085, 1087 (Ala.1991))).
The majority does not explain why in the case before us Hudson is entitled to State-agent immunity as to some of the document analysis he performed as purchasing foreman, but not entitled to State-agent immunity as to the rest of the document analysis he performed as purchasing foreman. In this case, even assuming that Hudson had a ministerial duty to pass along maintenance manuals, Hudson was required to exercise judgment in determining what materials he must pass along to what other people in the school system.
I believe that Hudson demonstrates that he is entitled to the mandamus relief he seeks. I believe that Hudson is entitled to State-agent immunity because he was exercising judgment in his capacity as the purchasing foreman for the school system, and I am not prepared to parse his performance of that responsibility into elemental parts. I therefore dissent.

. Cranman held:
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
“(1) formulating plans, policies, or designs; or
"(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
“(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
"(d) hiring, firing, transferring, assigning, or supervising personnel; or
"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.”
792 So.2d at 405.

. I stated in Cranman:
*1123 “Discretionary-function immunity requires a balancing of the competing policies of the right to a remedy, Art. I, § 13, Ala. Const. of 1901, and sovereign immunity, Art. I, § 14, Ala. Const. of 1901, in light of the separation-of-powers principle of Art. Ill, § 43, Ala. Const, of 1901. Historically, this balancing was commonly accomplished by determining whether the State-agent’s actions were 'discretionary' or were 'ministerial.' See, e.g., Taylor v. Shoemaker, 605 So.2d 828 (Ala.1992); Phillips v. Thomas, 555 So.2d 81 (Ala.1989); Bell v. Chisom, 421 So.2d 1239 (Ala.1982); DeStafney v. University of Alabama, 413 So.2d 391 (Ala.1981).”
792 So.2d at 413-14 (See, J., dissenting; footnotes omitted).

. In DeStafney v. University of Alabama, 413 So.2d 391, 395 (Ala.1981), the Court adopted the discretionary function/ministerial duty dichotomy. The Court stated the issue as follows:
"In the instant case, then, the dispositive issue is twofold: 1) Is the suit against the individual State employee, in effect, a suit against the State? and 2) Under the allegations of tortious injury, is the employee defendant entitled to substantive immunity because she was engaged in the exercise of a discretionary public function?”
413 So.2d at 395. The Court then held:
"|T]he Restatement’s [ (Second) of Torts (1974) ] doctrine of substantive immunity may yet be invoked if the official or employee 1) is engaged in the exercise of a discretionary function; 2) is privileged and does not exceed or abuse the privilege; or 3) is not negligent in the performance of his responsibility.”
413 So.2d at 395.

. I objected that the Cranman opinion itself was not well-founded, because the method it used to hold that the defendant physicians were not entitled to State-agent immunity was, first, to create categories of immunity, *1124 and then to find that "the defendant physicians are not entitled to State-agent immunity because they '[do] not fit within any category of conduct recognized by the restated rule as immune.’ " 792 So.2d at 416 (See, J., dissenting)(alterations in original).

. One problem with Cranman's "illustrative examples” is that they are not analytically discrete categories. For example, category 3 in Cranman states that a State-agent is immune when "discharging duties imposed ... by statute, rule, or regulation ...” 792 So.2d at 405. Category 4 states that a State-agent is immune when "exercising judgment in the enforcement of the criminal laws of the State....” 792 So.2d at 405.

. The majority states: "Bid proposals necessarily incorporate safety codes, and Hudson's job required him to analyze those codes in evaluating bids on specific projects.” 866 So.2d at 1119. The majority then finds that this exercise of judgment is immune. 866 So.2d at 1120.

.Cranman analysis is limited only to questions of State-agent immunity. 792 So.2d at 405 ("We therefore restate the rule governing State-agent immunity....”). There are other sources of immunity as well. The State itself is immune from suit under § 14, Ala. Const. 1901. "An action against a sheriff is 'essentially a suit against the state' ... Accordingly, we have held: '[A] sheriff ... is immune ... from suit....' ” King v. Colbert County, 620 So.2d 623, 626 (Ala.1993). Judges are immune from suit under the doctrine of "judicial immunity.” See, e.g., City of Bayou La Batre v. Robinson, 785 So.2d 1128, 1132-34 (Ala.2000); Almon v. Gibbs, 545 So.2d 18, 19-20 (Ala.1989). The Court has extended judicial immunity to cover "magistrates and clerks of court.” City of Bayou La Batre, 785 So.2d at 1133.

. In Cranman this Court recognized that "the State's immunity is constitutionally based, [and] neither the Alabama Legislature nor this Court has the power to waive the State's immunity from suit." 792 So.2d at 399 (footnotes omitted). The .Cranman plurality also conceded that "the vulnerability of State agents to suit, if not constrained, could lead to excessive judicial interference in the .affairs of coequal branches of government, contrary to § 43, [Ala. Const. of 1901].” 792 So.2d at 400-01. In Armory Commission of Alabama v. Staudt, 388 So.2d 991, 992 (Ala.1980), this Court observed: "Whether a governmental body is immune from suit cannot turn on labels placed on the body by the legislature. Were it otherwise, the legislature could circumvent the constitutional prohibition by merely delegating a state function to a separate legal entity....” Similarly, insofar as immunity is mandated by § 14, Ala. Const. of 1901, this Court cannot simply relabel State agents in order to deny them immunity from suit.

. In order to apply the new two-part Cran-man analysis, the main opinion breaks Hudson’s duties down into a series of discrete tasks, and then evaluates each aspect of Hudson's job to see if that particular function is immune. " The main opinion first states: "Hudson also argues that his duties as purchasing foreman were not ministerial. Again, we recast this issue into the context of the exercise of judgment within the framework of the Cranman analysis." 866 So.2d at 1118— 19. The main opinion' then considers how Hudson reviewed contracts: "Bid proposals necessarily incorporate safety codes, and Hudson's job required him to analyze those codes in evaluating bids on specific projects.” 866 So.2d at 1119. The main opinion concludes that that task falls under Cranman protection. The main opinion's analysis continues, however: "Haston finally argues that Hudson's job included passing along the maintenance manual he received from Garner & Associates for the bleachers ... [and] that doing so was a ministerial duty.... Again, we recast the issue in terms of the standard set forth in Cranman." 866 So.2d at 1119. The majority then holds that Hudson's duty of "[florwarding a maintenance manual does not fall within ... the exercise of judgment *1126 described ... in Cranman.” 866 So.2d at 1120.

. Thomas Wolfe, Look Homeward, Angel 3 (Charles Scribner’s Sons 1957):
“Each of us is all the sums he has not counted: subtract us into nakedness and night again, and you shall see begin in Crete four thousand years ago the love that ended yesterday in Texas.
"The seed of our destruction will blossom in the desert, the alexin of our cure grows by a mountain rock, and our lives are haunted by a Georgia slattern, because a London cutpurse went unhung. Each moment is the fruit of forty thousand years. The minute-winning days, like flies, buzz home to death, and every moment is a window on all time.”