This is an appeal by the plaintiffs, the surviving parents and the estate of Johnnie Carl Pugh, from a summary judgment in favor of the defendants, Butler Telephone Company, Inc., Bay Springs Telephone Company, Inc., Telephone Electronics Corporation, and Joseph D. Fail, Engineering Company, Inc., in a wrongful death action. Pugh, an employee of Sandidge Construction Company ("Sandidge"), was killed while working in the line and scope of his employment when the sides of an excavation in which he was working caved in on top of him. There was at least a scintilla of evidence that the excavation in which Pugh was working at the time of his death was neither shored nor sloped and that it violated certain general safety standards. The excavation had been dug the day of Pugh's death by Sandidge, without knowledge of Butler Telephone Company ("Butler") or Joseph D. Fail Engineering Company, Inc. ("Fail"). Sandidge was under contract with Butler to "lay approximately 18 miles of telephone cable" in a rural area. This was a system that had been approved by the U.S. Department of Agriculture, Rural Electrification Administration (REA). Butler's contract with Sandidge was an REA contract. Fail was the engineer whose responsibility it was to ensure the expeditious and economical construction of the project in accordance with approved plans and specifications. Fail was not to exercise any actual control over Sandidge's employees. The engineering contract between Butler and Fail further provided that Fail's obligations "run to and are for the benefit of only" Butler and the REA administrator.
The plaintiffs' issues for review relate only to the liability of Butler and Fail.
There are three issues presented for review.
The first issue is whether there is a scintilla of evidence to support a finding that Sandidge was an agent of Butler, which finding would enable the plaintiffs to sue Butler for the negligence of Sandidge under the theory enunciated inAlabama Power Co. v. Beam, 472 So.2d 619 (Ala. 1985).
Plaintiffs correctly state that whether a relationship is that of an independent contractor or master-servant depends on whether the entity for whom the work is being performed has reserved the right of control over the means by which the workis done. Sawyer v. Chevron USA, Inc., 421 So.2d 1263
(Ala. 1982). In the absence of a non-delegable duty, the mere retention of the right to supervise or inspect the work of an independent contractor as the work progresses to ensure compliance with the terms of an agreement does not operate to create a master-servant relationship. There must be a retention of control over the manner in which the work is done, before an agency relationship is created. Alabama Power Co. v. Beam,supra, at 625; Brown v. Commercial Dispatch Publishing Co.,504 So.2d 245 (Ala. 1987). In determining the relationship between Butler and Sandidge, we must review the written contract and the actions of the parties pursuant to the contract.
Our standard of review of a summary judgment granted in favor of a defendant requires us to review the record in a light most favorable to the plaintiff and to resolve all reasonable doubts against the defendant. Harrell v. Reynolds Metals Co.,495 So.2d 1381 (Ala. 1986); Burt v. Commercial Union Insurance Co.,489 So.2d 547 (Ala. 1986); Autrey v. Blue Cross Blue Shield ofAlabama, 481 So.2d 345 (Ala. 1985).
The following are all of the provisions of the contract that in any way relate to Butler's retained right of any control:
(1) Butler reserved the right to require the removal from the project of any of Sandidge's employees if in Butler's judgment such removal was necessary to protect Butler's interest. *Page 1319 
(2) Butler had the right to require Sandidge to increase the number of employees and to increase and change the amount or kind of tools or equipment if at any time the progress of the work was unsatisfactory to Butler, but Butler's failure to give such directions did not relieve Sandidge of its obligations to complete the work within the time and manner specified in the contract.
(3) Butler and the REA administrator reserved the right to inspect all payrolls, invoices of materials, and other data and records of Sandidge relating to the construction of the project.
(4) Sandidge was required at all times to take all reasonable precautions for the safety of its employees on the project and of the public and to comply with all applicable provisions of federal, state, and municipal safety laws and building construction codes, as well as safety rules and regulations of Butler. Interpreting the contract most favorably to the plaintiffs, one would conclude that if Sandidge violated this provision, after written notice was given Sandidge by Fail or Butler, Sandidge would immediately correct the violation and if it failed to do so then Butler "may correct such violation" at Sandidge's expense. If Butler deemed it necessary or advisable, it could correct a violation at Sandidge's expense without prior notice to Sandidge.
This contract is materially different from the contract inAlabama Power Co. v. Beam, supra.
We do not believe that the contract gave Butler any right of control over the manner in which the work was done by Sandidge. As previously noted, retention of the right to supervise or inspect the work as it progresses to ensure compliance with the terms of the construction contract and the retention of the right to stop work done improperly do not create a master-servant relationship between the entity for whom the work is being performed and the entity doing the work. AlabamaPower Co. v. Beam, supra.
There is no evidence in the record that Butler exercised any control or retained any right of control over the manner in which Sandidge performed any of its work on the project. The undisputed evidence in the record shows that Sandidge's employees took their directions in the laying of the pipe or cable exclusively from Sandidge and that Sandidge alone was "running the show and controlling the workplace."
The remaining two issues for review are as follows:
Is there a scintilla of evidence to support plaintiffs' contention that Fail negligently failed to carry out its duties under the terms of the contract between Butler and Fail and thereby proximately caused Pugh's death?
Whether Butler may be held liable for the negligence of Fail if Fail violated its contractual responsibilities by failing to be present on the jobsite and if this failure resulted in Pugh's death?
These issues will be discussed together, since we do not find that Fail did not carry out its duties under its contract with Butler.
Fundamental to the maintenance of a negligence action is the existence of a legal duty of care owed by the defendant to the plaintiff. Plaintiffs place great emphasis upon the contractual undertaking of Fail in its contract with Butler. While a party's negligent performance of a contract may subject that party to liability in tort for physical harm to others, seeMorgan v. South Central Bell Tel. Co., 466 So.2d 107, 114
(Ala. 1985), the scope of that duty, i.e., the persons to whom that duty runs, must be ascertained. Thus, for instance, a workmen's compensation carrier who makes safety inspections of its insured's premises owes a duty of care to the employees of that insured to perform the inspection non-negligently. Beasleyv. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844
(1971). That same carrier, however, making the same inspection of the same premises, owes no duty to the employees of an independent contractor who are on the insured's premises and who may be injured by a danger the carrier should have discovered. Armstrong v. Aetna Ins. Co., 448 So.2d 353
(Ala. 1983). In Armstrong, we *Page 1320 
held that the scope of the duty of care should be co-extensive with the class of persons who were the intended beneficiaries of the inspection, i.e., the class of persons covered by the workmen's compensation policy. Id. at 355.
A similar analysis must be made in the present case. Fail's inspections and other activities on site had nothing to do with the safety of Sandidge's employees. Fail's job was to insure compliance with the plans and specifications, for the benefit of Butler, the "owner."
Fail had no responsibility to "exercise any actual control over employees of the Contractor." Its job responsibilities did not include oversight of safety on the job. Fail was on site simply to ensure compliance by the contractor with the plans and specifications and the terms of the construction contract, for Butler's and the REA administrator's benefit.
In Weeks v. Alabama Electric Co-op, Inc., 419 So.2d 1381
(Ala. 1982), we analyzed an engineering services contract substantially identical to the Butler-Fail contract. We concluded that the kind of contractual language relied on by the plaintiffs in that case was insufficient as a matter of law to create a duty of care on the part of either the owner or the engineer.
In this case, efforts to prove the existence of a duty towards Pugh must fail, because plaintiffs are necessarily relying on nonfeasance, as opposed to misfeasance, in Fail's performance of the contract, i.e., plaintiffs contend that Pugh was killed because of the failure of Breland (Fail's resident engineer) to be at the bore site at the time of the accident.[1]
 "There is, in Alabama, no tort liability for nonfeasance for failing to do what one has promised to do in the absence of a duty to act apart from the promise made. On the other hand, misfeasance, or negligent affirmative conduct in the performance of a promise generally subjects an actor to tort liability as well as contract liability for physical harm to persons and tangible things. . . ."
Morgan v. South Central Bell Tel. Co., 466 So.2d at 114; see C C Products, Inc. v. Premier Ind. Corp., 290 Ala. 179, 186,275 So.2d 124, 130 (1972), appeal after remand, sub nom.Premier Ind. Corp. v. Marlow, 292 Ala. 407, 295 So.2d 396,cert. denied, 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308
(1974) ("a mere failure to perform a contractual obligation is not a tort, and it furnishes no foundation for an action on the case").
Under these circumstances, the issue of duty was a question of law, and it was correctly decided by the trial court.Alabama Power Co. v. Dunaway, 502 So.2d 726 (Ala. 1987).
The trial court did not err in granting summary judgment to Butler and Fail. The judgment should be affirmed.[2]
AFFIRMED.
MADDOX, ALMON, BEATTY and ADAMS, JJ., concur.
[1] We are assuming for the sake of this argument, without deciding, that the contract did require Fail to have a resident engineer present at all times at the site while such work was being performed.
[2] Since the action of the trial court can be affirmed on the basis of the lack of a duty, it is not necessary to address whether Sandidge's failure to follow the instructions given it by Fail was, as a matter of law, an unforeseeable, intervening event. See Hall v. Booth, 423 So.2d 184 (Ala. 1982); Vines v.Plantation Motor Lodge, 336 So.2d 1338 (Ala. 1976)