679 So.2d 641 (1996)
Terry L. McDUFFIE, et al.
v.
George ROSCOE, Jr., as personal representative of the Estate of George Twiller Roscoe, deceased.
1941112.
Supreme Court of Alabama.
April 19, 1996.
Rehearing Denied August 30, 1996.
Jerry L. Weidler and Pamela R. Scott, State of Alabama Department of Transportation, Montgomery, for Appellants.
Larry U. Sims and Joseph P.H. Babington of Helmsing, Lyons, Sims & Leach, P.C., Mobile, and Joseph W. Hutchinson III, Butler, for Appellee.
MADDOX, Justice.
This interlocutory appeal involves a single issue: Whether employees of the State Department of Transportation are entitled to substantive or discretionary function immunity under the particular facts of this case.
The plaintiff, George Roscoe, Jr., as personal representative of the estate of his son, George Twiller Roscoe, filed a wrongful death action against certain employees of the State Department of Transportation. He alleged that his son had been killed in an accident proximately caused by negligent or wanton conduct on the part of the State employees in maintaining the shoulders along a portion of State Highway 17. At the time of the accident, this portion of Highway 17 was being resurfaced.
In their answer, the State employees asserted the affirmative defense of substantive or discretionary function immunity, and, subsequently, they moved for a summary judgment based on this defense. The trial court denied the motion, and the employees, pursuant to Rule 5, Ala.R.App.P., appealed that denial. We reverse and remand, based on Grant v. Davis, 537 So.2d 7 (Ala.1988).
The plaintiff contends that "[u]nder Alabama law, substantive or discretionary function immunity is to be applied on a limited basis to protect the citizens of this state," and he argues:

*642 "Under the facts of this case, [this Court's] pragmatic approach [to applying substantive or discretionary function immunity], as well as the Restatement factors and previous decisions of this Court, support a finding that the state employees' challenged activitiesnegligent and wanton performance of mandatory inspections and failure to erect warning signs as called for by applicable standardswere ministerial, operational, and non-discretionary functions that did not involve the allocation of scarce state resources."
Because of this argument, we set out the facts and circumstances surrounding the accident and the activities of the defendants.
The one-car accident that resulted in the death of the plaintiff's son occurred on Highway 17 near milepost 81. George Twiller Roscoe was the only person in the vehicle, and there were no eyewitnesses to the accident. The evidence filed in support of the motion for summary judgment, along with the evidence filed in opposition to it, suggests that at the time of the accident the defendants, Terry L. McDuffie, Leroy Cobb, Johnny Cook, Joseph Dueitt, Edwin Knight, and Jerry Holt (collectively referred to as the "State employee defendants"), were employed by the Alabama Department of Transportation ("ALDOT"). McDuffie was employed as the district engineer for District 4 of ALDOT's Eighth Division; Cobb was a project engineer who worked on construction projects in the Eighth Division; Cook and Dueitt were project inspectors who also worked in the Eighth Division; Knight was the construction engineer for the Eighth Division; and Holt was the maintenance engineer for the Eighth Division. The portion of Highway 17 on which the accident occurred was within District 4 of the Eighth Division.
Prior to the accident, Butts & Billingsley Construction Company, Inc., had contracted with ALDOT to resurface Alabama Highway 17 from milepost 79.28 to milepost 92.60. The parties concede that resurfacing causes the level of the road surface to be raised above the level of the shoulder of the road and that after a road is resurfaced the shoulders must be built back up to the level of the highway surface. The construction contract did not require that Butts & Billingsley perform this shoulder work, nor did it require that the contractor place any signs warning of low shoulders along the resurfaced portion of the roadway. Instead, the shoulder work for the resurfacing project was to be performed by ALDOT.
Butts & Billingsley had completed much of resurfacing work in District 4 under several contracts, and because the District 4 crews were required to do all the shoulder work, the ALDOT crews were behind in their work. At the time of the accident, the District 4 crews were working on the shoulders of two other highways where resurfacing had recently been completed. Mr. McDuffie testified in his deposition that he had planned to move the road crews to the area where the accident occurred after the shoulder work was completed on the other projects. Some "low shoulder" warning signs had been erected at the intersection of Highways 17 and 84 approximately 4-5 miles north of milepost 81, but there were none at the point of the accident.
The plaintiff alleges that the State employee defendants were negligent in the performance of their required duties and through their negligence caused or allowed a dangerous drop-off to exist at the edge of the pavement, that they failed to warn the motoring public of the dangerous drop-off, and that they either failed to inspect, or inadequately inspected, the dangerous drop-off or shoulder of the highway.
The leading case on the issue involved in this appeal is Grant. In Grant, the plaintiffs were injured in an accident they alleged was caused by a low shoulder. They sued certain employees of the State Highway Department, alleging negligence, recklessness, and wantonness "in failing to properly inspect, maintain, or repair the shoulder of the road." 537 So.2d at 7. A jury found for the plaintiffs. The defendants moved for a JNOV based on their defense of discretionary immunity. The trial court denied the JNOV.
In reversing the denial of a JNOV, this Court stated:
"Discretionary function immunity is just what its label implies: immunity from tort *643 liability afforded to public officials acting within the general scope of their authority in performing functions that involve a degree of discretion. See DeStafney v. University of Alabama, 413 So.2d 391 (Ala. 1981), adopting Restatement (Second) of Torts, § 895D, `Public Officers' (1974). The applicability of the doctrine of qualified immunity must be determined on a case-by-case basis. Under this Court's decision in Barnes v. Dale, 530 So.2d 770 (Ala.1988), whether a particular defendant is engaged in a protected discretionary function, and is thereby immune from liability for injuries he causes, is a question of law to be decided by the trial court.
"In Bell v. Chisom, 421 So.2d 1239, 1241 (Ala.1982), this Court discussed at length the elements of, and factors for determining, the applicability of discretionary function immunity in a given case:
"`As the Restatement's comments suggest, the courts have at times found the discretionary function standard difficult to interpret. Nevertheless, in many cases this standard's proper application will be readily apparent. Two such cases will serve to illustrate the conflicting policy considerations the courts must apply. On the one hand, in DeStafney itself we had no difficulty in rejecting the immunity claim of the individual defendant, an aide at the University day care center who allegedly allowed the plaintiff's child to fall off playground equipment. This defendant's function clearly required due care rather than difficult decision making. On the other hand, we accepted the claim of immunity in Gill v. Sewell, [356 So.2d 1196 (Ala. 1978)], where the director of a work release center was sued for his decision to release a convicted felon who shot the plaintiff. That decision was an exercise of discretion central to the defendant's function, and accordingly in DeStafney we noted, "unquestionably, Gill falls squarely within § 895D(3)(a) of the Restatement," 413 So.2d at 394.
"`These two cases illustrate the governmental interest at stake in discretionary function immunity: the ability of public officers to "engage in making a decision by weighing the policies for and against it." Restatement, supra, comment d at 413. Without some degree of immunity, public officers may decide not on the basis of policy but of avoiding personal liability or vexatious suits. Their motive for doing so may be larger than in the private sector, for governmental action often has unusual potential to injure or to affect large numbers of people. See G. Bermann, "Integrating Governmental and Officer Tort Liability," 77 Columbia L.Rev. 1175, 1177 (1977). Discretionary function immunity, then, is called for when necessary to preserve the decision making function of government.
"`Considerable precedent has developed applying the concept of discretionary function in various contexts. The most common approach to the problem is to distinguish between planning and operational levels of action, with only the former being immune. Such terms, however, are only shorthand for a range of factorsdiscussed in the Restatement commentsthat the courts may need to consider. The problem is not to define terms like "discretionary" or "planning" but to make a pragmatic assessment of what, if any, degree of immunity is necessary to enable the particular governmental function to be effectively performed. Thus, courts must determine not only the existence but the extent of an "immunity," which may be absolute but is more commonly limited to good faith actions. See comments e and f from the Restatement.'

"The evidence adduced at trial established that once the defendants determine that repairs are needed, they share the responsibility of ranking the various projects, based on factors that include the ones enumerated above, viz., the type of defect, the particular road in question, and the economic resources and manpower available. While the defendants' duty to maintain and repair the roads is an affirmative duty, they must exercise a degree of discretion in the process of ranking various projects by priority. Ideally, the *644 slightest defect would be repaired immediately so that the highways would, at all times, be maintained at the greatest level of safety. Reality, however, poses limitations on the time, manpower, and financial resources available for making the needed repairs. It is under these limitations that the defendants must assess the relative priority to be given the various defects that are discovered, and rank their repair so as to achieve the optimum level of safety possible under all circumstances. While the Department's `Field Operations Manual' provides criteria by which these decisions are to be made, in the final analysis a significant degree of discretion is left to the defendants in their exercise of this particular function. We find that the appellants' duties associated with the repair and maintenance function substantially partake of planning level activities involving the exercise of discretion, and the defendants are therefore entitled to substantive immunity as a matter of law on plaintiffs' claims for failure to maintain and repair. Thus, the defendants' motion for JNOV should have been granted as to those claims.
"We also find that the same is true with respect to the claim that the defendants were negligent in failing to properly inspect the shoulder of the road and discover the defect. Both the `Maintenance Manual' and the `Field Operations Manual,' publications adopted to guide the Department workers in the performance of their duties, mandate frequent inspection of the roads to discover defects. The `Field Operations Manual' provides: `To make effective decisions, the Superintendent must be aware at all times of the current conditions of the roads. This means frequent inspection is necessary. Periodic inspection by the Superintendent and District Engineer will reveal additional locations where maintenance work is needed.' In addressing management responsibilities, the `Field Operations Manual' provides that the responsibilities of the division engineer and the division maintenance engineer include conducting formal semi-annual road inspections with each district engineer. The superintendent is further instructed to conduct weekly inspections of the road systems for the purpose of identifying specific maintenance required to provide the desired levels of maintenance service. The maintenance manual provides that `maintenance personnel, particularly field supervisors, must constantly be aware of the condition of the highways that they are responsible for, and also be able to readily identify specific sections and roadway features that require maintenance attention.'
"The duty to inspect the roads is an affirmative duty but one that also involves a type of discretion giving rise to qualified immunity. In performing that function, the defendants are involved in determining the manner of carrying out these inspections, i.e., determining the method and means. Thus, they are carrying out the directives of the guidelines that they must follow by determining how the inspections are to be carried out. While the defendants have no discretion not to inspect, they do have the discretion to determine the practical method for inspecting each road. We find this conclusion consistent with the guidelines established in comment f of § 895D of the Restatement, and with our decisions in DeStafney and Chisom, supra."
537 So.2d at 8-10 (emphasis original).
The plaintiff attempts to distinguish Grant by this argument:
"[The defendants rely] heavily on Grant v. Davis, 537 So.2d 7 (Ala.1988). However, that case is distinguishable. Grant did not involve a resurfacing project where the state employees knew that [for] over a thirteen-mile stretch of road the pavement surface would be raised by a minimum of one and one-half inches and also knew that dirt would not be brought to raise the shoulders until months later. Grant concerned the duty of the highway maintenance crews to inspect all roadways within their jurisdiction or within their district. These differences are significant because of the degree of scrutiny one would expect to be given to a thirteen-mile stretch of road under construction or repair on which it was known low shoulders would result *645 from work being performed, as opposed to the several hundreds of miles of road located within the average Department of Transportation district.
"Another fact which distinguishes Grant is that [the] plaintiff in Grant did not argue and there was no issue before this Court that the state employees should have erected warning signs in the event [that] they were unable to effect repairs. By contrast, here, that is the central focus of [this] Plaintiff's case. The state employees have testified that they planned this project and several related projects in a fashion that they knew would create low shoulders along a seventeen-mile portion of a state highway. While it is highly questionable that this is good practice, knowing that corrective work would not be taken to raise the shoulders to the proper level, these state employees had a duty to inspect, locate, and warn about dangerous low shoulders [that] they knew would be created. Further, there were two inspectors on this job being paid to inspect this specific road and the work being done by [Butts & Billingsley]. This set of facts is completely different from the set of facts presented by Grant."
(Appellee's Brief, 28-30; emphasis original; footnotes and citations omitted.)
Although we have carefully considered the plaintiff's argument that the State employee defendants had no discretion in posting warning signs, we cannot agree that posting warning signs was a ministerial function. We conclude that the facts of this case are not so different from those in Grant as to justify denying these defendants' defense of substantive or discretionary function immunity.
The State employee defendants were immune from liability, based on the qualified immunity doctrine set forth in Grant. The order denying these defendants' summary judgment motion is reversed. This cause is remanded for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and COOK and BUTTS, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
In Taylor v. Shoemaker, 605 So.2d 828 (Ala.1992), a case relied on by the defendants, I dissented and asked: "Where is the discretion?" 605 So.2d at 834-35. In today's case, I easily recognize the discretion.