694 So.2d 1302 (1997)
Frank DEFOOR
v.
James E. EVESQUE and USX Corporation.
1951176.
Supreme Court of Alabama.
May 2, 1997.
*1303 A. Joe Peddy and Thomas Coleman, Jr., of Smith, Spires & Peddy, Birmingham, for James A. Evesque, et al.
Michael L. Lucas and Harlan F. Winn III of Burr & Forman, Birmingham, for USX Corp.
SEE, Justice.
The plaintiff, Frank Defoor, slipped and fell at Bessemer State Technical College ("Bessemer Tech"), while taking a hydraulics test to qualify for employment with USX Corporation ("USX"). He filed negligence claims against James Evesque, the Bessemer Tech employee who administered the test, alleging that there was spilled hydraulic fluid at the test site and that Evesque's failure to clean up the fluid had caused Defoor to slip and fall, and against USX, on the theory that Evesque was the "borrowed servant" of USX. The trial court entered a summary judgment for USX and Evesque, holding that Evesque was not a borrowed servant and that he was entitled to immunity as a State employee. Defoor appealed. We agree with the ruling that Evesque was not a borrowed servant; therefore, we affirm the summary judgment as it relates to USX. However, we conclude that the trial court erred in holding that Evesque was entitled to immunity. Therefore, we reverse the summary judgment as it relates to the defendant Evesque, and we remand.
This Court is required to review summary judgments in a light most favorable to the nonmoving party and to resolve all reasonable doubts against the movants, in this case Evesque and USX. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993). Viewed in that light, the evidence suggests the following: In 1991 Defoor applied for a maintenance utilityman position with USX. As part of the prehiring process, Defoor was required to take a hydraulics test. Pursuant to a contract that USX had with Bessemer Tech, all hydraulics tests for USX positions were administered on the premises of Bessemer Tech. Bessemer Tech *1304 hired Evesque and placed him in charge of administering the hydraulics tests. Evesque, on his own initiative, adopted the practice of inspecting the test site before each test. If he found any spilled oil, he cleaned it up with a mop and paper towels. On June 4, 1991, while taking a hydraulics test, Defoor slipped, fell, and sustained injuries.
In 1992, Defoor filed an action in the Jefferson County Circuit Court against Evesque, alleging that he had acted negligently in either conducting the inspection or cleaning up the test site.[1] USX was added as an indispensable party pursuant to the contract it had with Bessemer Tech. Defoor amended his complaint to list Evesque as a defendant in both his official and individual capacities. When the trial court entered the summary judgment for USX and Evesque, Defoor filed this appeal.

I. BORROWED SERVANT
Defoor asserts that the summary judgment was improper as to USX because, he argues, Evesque was a "borrowed servant" of USX, and USX was therefore liable for his negligent acts. A corporation is subject to liability for the actions of its servants, agents, or employees only when such acts are done in or about the duties assigned them or are accomplished within the scope of their duties. See Martin v. Anniston Foundry Co., 259 Ala. 633, 68 So.2d 323 (1953). An employee may, however, be transferred from his general employer to a "borrower" with respect to particular work to be done for that borrower and thus can subject the borrower to liability for certain of the employee's acts. Id. at 637, 68 So.2d at 327. To determine if a master-servant, or employer-employee, relationship exists, we analyze: (1) the character of service, duration of employment, and who is paying the employee; (2) whether the employee consented to becoming the "borrowed servant" of the alleged borrower and suspended his employment with his general employer; and (3) whether the general employer retained the ultimate right to control the employee's work. See State Farm Mut. Auto. Ins. Co. v. Vails, 278 Ala. 266, 270-71, 177 So.2d 821, 824-25 (1965); United States Fidelity & Guaranty Co. v. Russo Corp., 628 So.2d 486, 488-89 (Ala.1993)[2] ("USF & G") In determining whether the requisite degree of control exists, this Court recognizes that it is the entity's right to control the manner and means of the employee's work that establishes the employer-employee relationship, not the mere right to set general guidelines. See Gossett v. Twin County Cable T.V., Inc., 594 So.2d 635, 639 (Ala.1992) ("Where the alleged master retains merely the right to inspect the work as it progresses, in order to ascertain if it is completed according to plans or specifications, and the right to stop work improperly done, the master and servant relationship is not created."); Pugh v. Butler Tel. Co., 512 So.2d 1317, 1318 (Ala.1987) (stating that no master-servant relationship exists between an entity and a worker if the entity has not reserved the right to control the means by which the work is performed).
The facts that Evesque was hired by Bessemer Tech, that he was paid by Bessemer Tech, and that he worked exclusively on Bessemer Tech's premises indicate that Evesque was not USX's borrowed servant. See USF & G, 628 So.2d at 488-89. The lack of evidence that either Evesque or Bessemer Tech ever consented to Evesque's becoming an employee of USX, or that he ever suspended his work for Bessemer Tech, also indicates that Evesque was not USX's borrowed servant. See Vails, 278 Ala. at 270, 177 So.2d at 824; Alabama Power Co. v. Smith, 273 Ala. 509, 520, 142 So.2d 228, 239 *1305 (1962). We are not persuaded that USX's assisting in developing the test, providing guidelines for administering the test, and determining which applicants passed the test are sufficient to create an employer-employee relationship between USX and Evesque.[3] Here, Bessemer Tech and USX entered into an arm's-length contract under which Bessemer Tech conducted certain testing on Bessemer Tech's premises with Bessemer Tech's employee, Evesque, administering the test. Although USX provided certain guidelines for the testing, Bessemer Tech retained the right to control the manner and means by which Evesque administered the tests within the structure provided by the guidelines, and thus it retained Evesque as its employee. See Gossett, 594 So.2d at 639 (stating that the right to ascertain whether work is completed according to plans or specifications is insufficient to create an employer-employee relationship); Pugh, 512 So.2d at 1318 (same). Accordingly, the summary judgment was proper as to USX.

II. QUALIFIED IMMUNITY
Defoor also contends that Evesque was not entitled to immunity while performing the function of inspecting and cleaning the test site. When a State employee is sued for negligence in an action that is not, in effect, an action against the State,[4] the employee may be protected by qualified immunity. Nance v. Matthews, 622 So.2d 297, 300 (Ala.1993). Qualified immunity shields a State employee from liability if the employee is engaged in a discretionary function, instead of a ministerial one, when the alleged negligence occurs. Id. Whether a State employee's function was discretionary or ministerial is a question of law. McDuffie v. Roscoe, 679 So.2d 641, 643 (Ala.1996) (citing Barnes v. Dale, 530 So.2d 770 (Ala.1988)).
Neither the Restatement (Second) of Torts nor our cases provide a crisp distinction between discretionary and ministerial functions. See Smith v. Arnold, 564 So.2d 873, 876 (Ala.1990) (citing Restatement, § 895D, cmt. f (1979)). As a general rule, however, discretionary functions are characterized by planning tasks, and policy-level decision-making. McDuffie, 679 So.2d at 643. Ministerial functions, on the other hand, are characterized by operational tasks and minor decision-making. Id. In analyzing each case, we must make a "pragmatic assessment of what, if any, degree of immunity is necessary to enable the particular governmental function to be effectively performed." Bell v. Chisom, 421 So.2d 1239, 1241 (Ala.1982).
Our cases illustrate a broad distinction between obviously discretionary (i.e., immune) functions and obviously ministerial (i.e., nonimmune) functions. In Bell, 421 So.2d at 1241, this Court stated:
"On the one hand, in DeStafney [v. University of Alabama, 413 So.2d 391 (Ala. 1981),] ... we had no difficulty in rejecting the immunity claim of the individual defendant, an aide at the University day care center who allegedly allowed the plaintiff's child to fall off playground equipment. This defendant's function clearly required due care rather than difficult decision making. On the other hand, we accepted the claim of immunity in Gill v. Sewell, [356 So.2d 1196 (Ala.1978)], where the director of a work release center was sued for his decision to release a convicted felon who shot the plaintiff. That decision was an exercise of discretion central to the defendant's function, and accordingly, in DeStafney we noted, `unquestionably, Gill falls *1306 squarely within § 895D(3)(a) of the Restatement....'"
A finer distinction can be illustrated by comparing Grant v. Davis, 537 So.2d 7 (Ala. 1988), and Phillips v. Thomas, 555 So.2d 81 (Ala.1989). In Grant, 537 So.2d at 9, this Court held that the superintendent of the State Highway Department and an engineer employed by the Department were entitled to discretionary function immunity in a lawsuit alleging liability for failure to inspect, repair, and maintain a limited portion of the State's highway system. Critical to the decision in Grant was the State employees' responsibility to prioritize needed repairs and to allocate scarce State resources to effect those repairs. Id. On the other hand, in Phillips, 555 So.2d at 86, we held that a State employee was not entitled to discretionary function immunity in a lawsuit alleging that she had negligently inspected the pool located on the premises of a child-care facility and had negligently reported on whether the pool was enclosed by a fence. The employee had an affirmative duty to inspect, but the conduct of the inspection itself was ministerial. Id.
In this case, while Evesque's voluntary decision to adopt the procedure of inspecting the test site might have been discretionary, his actual conduct of the inspection and cleaning tasks was not.[5] Evesque's inspecting and cleaning, including deciding whether to use paper towels or a mop, are closer to the function held not immune in Phillips than to the function held immune in Grant. Evesque's work involved no marshalling of State resources, no prioritizing of competing needs, no planning, and no exercise of policy-level discretion.
The summary judgment is affirmed as it relates to USX. It is reversed as it relates to Evesque. The case is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and ALMON, HOUSTON, and KENNEDY, JJ., concur.
BUTTS, J., concurs in part and dissents in part.
BUTTS, Justice (concurring in part and dissenting in part).
I agree that the summary judgment was proper as to USX, on the basis that James Evesque was not a borrowed servant of USX Corporation. However, I must respectfully dissent from the reversal of the summary judgment as to the defendant Evesque. I think Evesque is entitled to qualified immunity from liability.
This Court has described "ministerial acts" as those acts requiring an employee to exercise judgment and choice and to determine what is just and proper under the circumstances. Smith v. Arnold, 564 So.2d 873 (Ala.1990). The majority holds that Evesque's voluntary decision to inspect the testing area might have been a discretionary act but that, when the inspection revealed the hazard of spilled hydraulic fluid, his acting to correct the problem was ministerial. Thus, under the majority's reasoning, Evesque was protected by qualified immunity when he decided to inspect the premises, but not when he attempted to correct a problem that his inspection revealed. I cannot draw this fine distinction.
The majority relies upon Phillips v. Thomas, 555 So.2d 81 (Ala.1989), wherein the Court recognized the general principle that discretionary acts may also have ministerial components. In Phillips, the defendant, a *1307 day-care worker, had a statutory duty to inspect the premises of the day-care facility. Although this duty involved some degree of discretion, the worker was required to complete a written form containing "yes" or "no" questions about the condition of the day-care premises; the worker was not protected by qualified immunity when she wrongly answered one such question. The worker had little choice as to whether to inspect the premises or as to how she reported her findings; thus, her inspection was almost entirely ministerial.
In contrast, Evesque had no statutory duty to clean the testing area, much less a prescribed way to do so. Evesque was afforded great latitude and discretion in performing his job as a test administrator and instructor in the Industrial Training Department of Bessemer State Technical College. His decision to clean the testing area was an exercise of this discretion, and the cleaning itself was also an exercise of this discretion. I would therefore hold that Evesque is protected by qualified immunity from Defoor's negligence claims.
NOTES
[1] Defoor initially sought relief against Bessemer Tech before the State Board of Adjustment, see Ala.Code 1975, §§ 41-9-60 to -74, but was unsuccessful. Although Defoor initially included Bessemer Tech and its academic dean as defendants in this action, he voluntarily dismissed Bessemer Tech, and the trial court entered a summary judgment in favor of the academic dean. This appeal does not involve either of those two defendants.
[2] We also note that "`[i]n the absence of evidence to the contrary, there is an inference that the servant remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer.'" Vails, 278 Ala. at 270, 177 So.2d at 825 (quoting United States Steel Corp. v. Mathews, 261 Ala. 120, 124, 73 So.2d 239, 242 (1954) (citations omitted)).
[3] Defoor's argument that USX could have asked Bessemer Tech to require Evesque to keep the test area clean is inapposite. Even if USX retained such a right to set general safety guidelines, this would not amount to control of the manner and means by which Evesque inspected and cleaned the test area. See Pugh, 512 So.2d at 1318.
[4] The trial court entered the summary judgment for Evesque because it viewed Defoor's action against Evesque as, in effect, an action against the State. A State employee sued in his official capacity and also sued individually may be entitled to absolute immunity under Article I, § 14, Alabama Constitution of 1901, if the action is, in effect, against the State. Phillips v. Thomas, 555 So.2d 81, 83 (Ala.1989). The nature of this action and the relief sought by Defoor demonstrate that Defoor's action against Evesque is not, in effect, an action against the State. Id. at 83-84.
[5] Although we do not reach the issue whether the decision to conduct inspections in general was discretionary, the decision of the Supreme Court of Kansas in Allen v. Kansas Department of Social and Rehabilitation Services, 240 Kan. 620, 731 P.2d 314, 316 (1987), confirms our conclusion:

"Although under no legal obligation to do so, SRS voluntarily undertook to clean the hallway floor. This decision was clearly [a] ... discretionary function ... but was the actual physical cleanup activity an indivisible part of the exercise of the discretionary function and hence immune from liability ...? We believe not. Whether the employee used a wet or dry mop or plain water or a detergent, in carrying out his assignment, were choices not involving any particular skill or training. The actual cleanup ... is about as ministerial as an act can be. The discretionary decision to undertake a purely ministerial task of janitorial work cannot cloak the negligent performance of the ministerial act with immunity...."