HOUSTON, Justice.
This appeal raises the issue whether a consulting company that is hired only to give a business advice about how to improve efficiency owes a duty to warn of, or to make safe, certain hazards caused by equipment that is reactivated based on the advice of the consulting company.
In 1991, Copeland Corporation hired a consulting firm, Universal Scheduling Company (“USC”), to help improve workplace efficiency. Specifically, Copeland’s contract with USC stated:
“Copeland desires to secure the advice, assistance, counsel and services of consultant [USC] with respect to certain systems improvement and information control and product flow matters for Copeland’s machine shop, body and crankshaft lines at its Hartselle, Alabama, Plant, including matters relating to Copeland’s equipment, manpower and facility utilization at the Hartselle Plant [the (‘services’) ].”
*563 USC worked at the Hartselle Plant from September 1991 through December 1992. During that time, USC observed the operations of a particular machine, the Arcade 9000. The Arcade 9000 tools the crankshafts that are used in the compressors manufactured by Copeland. The Arcade 9000 is divided into two main sections, TR7 and TR8, and the crankshafts were originally designed to move between TR7 and TR8 by way of a fully guarded hydraulic shuttle that connected the two sections.
The Arcade 9000 was initially constructed to require only one operator. However, in 1982, problems with the machine led Copeland to discontinue use of the shuttle and to hire another operator to manually transport the crankshafts from TR7 to TR8. The guard surrounding the shuttle was removed so that the TR8 operator could hand load the parts onto the TR8. The Arcade 9000 was operated in this fashion for about 10 years.
USC observed the Arcade 9000 and (although this is disputed by the parties) evidence indicates it recommended that Copeland put the shuttle back into operation so that the second operator position would be unnecessary. The shuttle was eventually reactivated, but the shuttle guarding was not replaced. USC did not consider operator safety in its recommendation to reactivate the shuttle. USC continued to observe the Arcade 9000 after the shuttle was operational.
On June 28, 1993, Dudley J. Smith was killed while operating the Arcade 9000. He died as a result of injuries caused when the shuttle struck his head. Rebecca Ann Smith, as Dudley Smith’s surviving spouse and as the personal representative of his estate, sued various parties, including USC, in the Morgan Circuit Court, alleging negligence and wanton misconduct. She claimed that USC had owed a duty of care to Mr. Smith through USC’s inspections, modifications, and recommendations for modifications to the Arcade 9000. USC denied making any such modifications or recommendations. The trial court, without referring to any factual dispute, held that USC had owed no duty to Mr. Smith and entered a summary judgment in favor of USC. All of the other defendants were dealt with through pro tanto settlements, summary judgments, and a default judgment. Mrs. Smith appeals, but only as to the summary judgment in favor of USC.
The sole issue is whether USC owed a duty of care to Mr. Smith through USC’s involvement with the reactivation of the hydraulic shuttle. Based on this Court’s holding in Pugh v. Butler Tel. Co., 512 So.2d 1317 (Ala.1987), we conclude that USC owed no such duty. In Pugh, this Court discussed the duty question:
“Fundamental to the maintenance of a negligence action is the existence of a legal duty of care owed by the defendant to the plaintiff.... While a party’s negligent performance of a contract may subject that party to liability in tort for physical harm to others, see Morgan v. South Central Bell Tel. Co., 466 So.2d 107, 114 (Ala.1985), the scope of that duty, i.e., the persons to whom that duty runs, must be ascertained. Thus, for instance, a workmen’s compensation carrier who makes safety inspections of its insured’s premises owes a duty of care to the employees of that insured to perform the inspection nonnegligently. Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971). That same carrier, however, making the same inspection of the same premises, owes no duty to the employees of an independent contractor who are on the insured’s premises and who may be injured by a danger the carrier should have discovered. Armstrong v. Aetna Ins. Co., 448 So.2d 353 (Ala.1983). In Armstrong, we held that the scope of the duty of care should be co-extensive with the class of persons who were the intended beneficiaries of the inspection, i.e., the class of persons covered by the workmen’s compensation policy. Id. at 355.”
512 So.2d at 1319-20. (Emphasis omitted.) In accordance with this analysis, the Court in Pugh found no duty of care on the part of an individual who was under a *564 contractual obligation simply to inspect and to ensure compliance with certain specifications, not to make sure that the job site was safe.
The contract by which Copeland hired USC did not hold USC out to be an expert in safety management, but to be “a systems and productivity analysis company with significant experience in and knowledge concerning the areas of equipment, manpower, and facility utilization improvements.” USC had no contractual obligation to provide a safe workplace. Copeland sought from USC only advice on the improvement of its efficiency, not expertise on the safety of its machinery. USC did not remove the shuttle guarding or recommend that it not be replaced. The fact that USC closely studied, and gave advice concerning, the reutilization of a part of the machine that caused Mr. Smith’s death did not impose on USC a duty of care. Such a duty would go well beyond the scope of USC’s contractual involvement with Copeland.
AFFIRMED.
HOOPER, C.J., and MADDOX, KENNEDY, COOK, SEE, LYONS, and BROWN, JJ., concur.
JOHNSTONE, J„ dissents.