# CIRCUIT COURT OF THE CITY OF STAUNTON

Margaret Atkinson

v.

Roman Sachno, Jr.

January 26, 2000

BY JUDGE HUMES J. FRANKLIN, JR.

This case comes before the court on plaintiff's claim of medical malpractice against defendant. Specifically, plaintiff alleges that defendant failed to advise plaintiff of the results of a chest X-ray, taken October 14, 1997, which reflected a possible 12mm. nodule of which the radiologist stated that "an active process including metastatic disease is not ruled out." Plaintiff further claims that defendant was negligent in not attempting to compare the results of the October 14, 1997, study with previous films and that defendant was negligent in not ordering or suggesting additional diagnostic studies. Plaintiff alleges that she has sustained significant personal injury as well as a decreased life expectancy as a result. Defendant has answered plaintiff's claim with a plea of sovereign immunity, which the court now addresses.

Defendant, Dr. Sachno, is a physician duly licensed by the Commonwealth of Virginia to practice medicine. Since approximately December 1972, defendant has contracted with the Virginia Disability Determination Services (DDS) to provide consultative exams and reports to be used in the determination of disability for Social Security purposes. It was in this capacity the defendant came to examine the plaintiff, Margaret Atkinson.

Of initial importance is defendant's ability to plead sovereign immunity. Plaintiff has alleged that defendant is not an employee of the Commonwealth who may be entitled to such a plea but, rather, is an independent contractor. Independent contractors are not entitled to the protection of sovereign

immunity. "Generally, whether a person is a servant or an independent contractor is a question of fact for a properly instructed jury. When, however, the evidence admits of but one conclusion, the question is one of law." *Hadeed v. Medic-24, Ltd.*, 237 Va. 277, 288, 377 S.E.2d 589, 594-95 (1989) (citing *Drake v. Livesay*, 231 Va. 117, 121, 341 S.E.2d 186, 188-89 (1986); *Naccash v. Burger*, 223 Va. 406, 417-19, 290 S.E.2d 825, 831-33 (1982); *Stagg v. Taylor*, 119 Va. 266, 270, 89 S.E. 237, 238 (1916)). There are four elements to be considered when determining whether a master and servant relationship exists. They are (1) selection and engagement of the servant, (2) payment of compensation, (3) power of dismissal, and (4) power of control. Of these factors, only the fourth, power of control, is determinative. *Hadeed v. Medic-24, Ltd.*, 237 Va. 277, 288, 377 S.E.2d 589, 594-95 (1989). This factor refers to control over the means and method of performing the work. *Baker v. Nussman & Cox*, 152 Va. 293, 304, 147 S.E. 246, 249 (1929).

As for the initial three factors, defendant was recruited by letter to provide the consultative exams to DDS. He is paid a fixed fee for each patient he examines who is referred to him via DDS. Defendant could, at any time, refuse to take referrals from DDS. It is presumed also that DDS could at any time stop sending referrals to defendant.

The fourth factor, the power of control, is dispositive in determining whether defendant was an independent contractor. The court disagrees with the plaintiff that the Commonwealth lacks control over the means and method by which he performs DDS examinations. The Commonwealth does exert power of control over the defendant through the numerous requirements placed on the defendant by DDS. DDS determines whom the defendant will examine. It prescribes the length of the exam, what is to be examined, what tests are to be performed, that history which the defendant receives, the findings to be made, and the time within which the report must be filed. In fact, the DDS Consultative Examination Requirements (CERs) set forth exactly what is to be done by the examining physician in thirteen different examination guidelines. As the defendant points out, if he fails any of the DDS requirements, he does not get paid. Additionally, the patients he examines do not pay the defendant; rather he is paid directly by the Commonwealth. Finally, the defendant has no control over what he is paid or what those he examines are charged. Speculation does exist that the defendant could waive his payment by not submitting a bill to DDS, thereby possibly resulting in no fees for the claimant from DDS. This, however, is unclear, as it has never been done. Even if such a waiver of fees was possible, that alone is not enough to show lack of control over the defendant by DDS.

Counsel for plaintiff correctly points out that defendant performs the examinations for DDS in his own office, with his own employees and equipment, and without a representative of the Commonwealth present. However, the location where the examination is performed and the ownership of the medical equipment used to perform it are irrelevant in this case because no matter where or with whose equipment the examination is performed, it is still subject to the numerous DDS requirements. Thus, the Commonwealth, through DDS, exercises sufficient control over defendant to negate the contention that he is an independent contractor.

The court's finding is consistent with prior decisions. In *McDonald v. Hampton Training School*, the defendant hospital asserted that its inability to control a doctor's exercise of professional judgment was conclusive in the determination of independent contractor status. Justice Lacy, writing for the court, disagreed. "The proposition adopted by the trial court and argued by the hospital here may have been a correct statement of the law at one time; however, it is inconsistent with current case law in this jurisdiction and with the methods of operation currently utilized by health care providers." 254 Va. 82 (1997). The court then cites *Ritholz v. Commonwealth*, 184 Va. 339, 35 S.E.2d 210 (1945). In *Ritholz*, defendant physicians were held to be employees rather than contractors, "notwithstanding the fact that the defendants actually exercise no control over 'the mode, manner, or result of the examination of the eyes of the customer and the doctor is free to exercise his own will [and] judgment and to use his own professional skill and methods in making such an examination'." *Id.* at 358-59, 35 S.E.2d at 219 (citations omitted). The Court went on to hold in *McDonald* that "for purposes of determining employment status, the exercise of professional judgment by a physician in the performance of professional duties is a factor, but not the only factor, to be considered when evaluating the employer's power to control the means and method utilized to perform the work." 254 Va. 79 at 86 (1997).

In a similar case before the Circuit Court of Augusta County, Judge Thomas H. Wood ruled that two physicians who worked for the Commonwealth of Virginia at Keen Mountain Correctional Facility were not independent contractors, despite language to the contrary in their contracts. *Johnson v. Quinones*, 48 Va. Cir. 283 (1999). Specifically, in his letter opinion, Judge Wood wrote: "In my view, the third prong of the *James* test set forth above [the degree of control and direction exercised by the governmental entity over the employee] determines whether the individual is the type of State agent who is entitled to claim sovereign immunity." *Id.* at 284. Thus, despite contractual language labeling the physicians as independent

contractors, the court made its finding of employment status based on the control exercised by the Commonwealth over the physicians.

Similarly, in *Cochran v. Canizares*, No. 941358, June 9, 1995, the Virginia Supreme Court upheld a finding of sovereign immunity for a physician in a state clinic who was granted sovereign immunity at the trial court despite the factual findings that the defendant supplied her own malpractice insurance, that she had agreed in contract to hold the Commonwealth harmless for any malpractice she might commit, that the Commonwealth did not withhold income taxes from her contractual reimbursement, that she paid her own Social Security self-employment tax, and that she was able to practice on her own outside the clinic as well as send another physician to treat at the clinic in her place.

Because the court finds that the defendant in the present case is not an independent contractor, it is, therefore, necessary to apply the four-pronged sovereign immunity test to determine if the defendant is entitled to such protection. This test was first enunciated by the Court in the case of *James v. Jane*, 221 Va. 43, 267 S.E.2d 108 (1980), and was more recently applied by the Court in the case of *Lohr v. Larsen*, 246 Va. 81, 431 S.E.2d 642 (1993). The factors to be considered are: (1) the nature of the function the employee performs; (2) the extent of the governmental entities' interest and involvement in the function; (3) the degree of control and direction exercised by the governmental entity over the employee; and (4) whether the alleged wrongful act involved the exercise of judgment and discretion.

Plaintiff argues that defendant, even if he were an employee of the Commonwealth, cannot claim the protection of sovereign immunity. In support of this argument plaintiff goes through a fact-by-fact comparison of the case at hand with the facts of *Lohr*. Rather than adopt plaintiff's factual comparison, the court chooses (as did the court in *Lohr*) to apply the four-pronged *James* test to the facts at hand.

The *Lohr* court summarized the applicability of the first two prongs of the *James* test:

> In *James*, we indicated that if the function that a government employee was negligently performing was essential to a governmental objective and the government had a great interest and involvement in that function, those factors would weigh in favor of the employee's claim of sovereign immunity [citations omitted]. On the other hand, if that function has only a marginal influence upon a governmental objective and the government's interest and involvement in that

function are "slight," these factors weigh against granting the governmental immunity to a government employee.

246 Va. 81, 85 (1993) (citations omitted).

As stated, defendant, Dr. Sachno, is a physician duly licensed by the Commonwealth of Virginia to practice medicine. Since in or around December 1972, defendant has contracted with the Virginia Disability Determination Services (DDS) to provide consultative exams and reports to be used in the determination of disability for Social Security purposes. In order to determine whether a person qualifies for Social Security disability benefits, DDS must first determine if there is objective medical evidence of an impairment that severely limits the claimant's ability to function. If the available medical evidence through claimant's treating physician or past medical records is not sufficient, DDS requests that the claimant undergo a special consultative examination for the needed information. This is the function that defendant performs.

The General Assembly has expressed its strong public policy in favor of providing the services necessary to make the best use of available resources, including federal resources, for the benefit of persons with disabilities. Va. Code Ann. § 51.5-1. Defendant's function was to assist in the accurate and effective distribution of disability payments through Social Security. Clearly, the Commonwealth has a significant interest and involvement in this function. Therefore, the defendant satisfies the first two prongs of the sovereign immunity test.

The third prong of the *James* test is the degree of control and direction exercised by the government over the employee. A high level of governmental control and direction of its employees weighs in favor of sovereign immunity. *Lohr*, 246 Va. at 88, citing *James*, 221 Va. at 53-54. This factor has already been analyzed in determining whether defendant is an independent contractor. DDS, an entity of the Commonwealth, prescribes the length of the exam, who is to be examined, what is to be examined, what tests are to be performed, that history which the defendant receives, the findings to be made, and the time within which the report must be filed. In fact, the CERs set forth exactly what is to be done by the examining physician in thirteen different examination guidelines. As the defendant points out, if he fails any of the DDS requirements, he does not get paid. Additionally, the patients he examines do not pay the defendant; rather he is paid directly by the Commonwealth. Finally, the defendant has no control over what he is paid or what those he examines are charged. This amounts to a high level of governmental control and direction.

Plaintiff argues that notwithstanding the restrictions placed on defendant by DDS, the government does not exert a high level of control or direction over defendant. In support of this argument, plaintiff points to the fact that defendant chooses which of his own equipment to use and is apparently free to do any procedure in his own office for which he is qualified. In other words, plaintiff's argument is that although DDS requirements control what is to be done during an examination, defendant is nonetheless free to satisfy the requirements however he sees fit. As the Court stated in *Lohr*,

> At first glance, the issue of wide discretion that influences our consideration of the grant of governmental immunity in applying the third element of the *James* test appears to be at odds with our consideration of a higher level of governmental control in the application of the fourth element of the test in this case. However, when a government employee is specially trained to make discretionary decisions, the government's control must necessarily be limited in order to make the maximum use of the employee's special training and subsequent experience.

246 Va. at 88.

The present case is such a situation. Dr. Sachno, as a licensed physician, is indeed specially trained to make discretionary decisions.

The Court in *Lohr*, then, made its decision regarding degree of governmental control by showing that more governmental control was exercised over Dr. Larsen than over the physicians in *James*. *Id*. In their comparison, the Court noted that the physicians in *James*, "exercised broad discretion in selecting the methods by which they cared for their patients," while in Dr. Larsen's case, "the Commonwealth controls 'absolutely' the equipment [he] used, the procedures he could perform, and 'even the brand names of the medication he could prescribe'." *Id*. (citations omitted).

In the present case, Dr. Sachno is not controlled in the equipment he uses. He is not, however, given the broad discretion that existed for the physicians in *James*. The physicians in *James* were not required to satisfy the guidelines that are in place in the DDS CERs. In fact, as the Court wrote in *James*, "at the point when the physician agrees to treat or operate on a certain patient, although his employment by the University makes possible the arrangement, the relationship becomes the personal and confidential one of doctor and patient, not the Commonwealth of Virginia and patient." 221 Va. at 50. In the instant case, the relationship between the claimant and DDS is never severed. Dr. Sachno merely acts as an intermediary in the process, performing an examination so a decision regarding disability can be made. In fact, when the

X-rays of plaintiff's chest were made, a copy was first sent to DDS; Dr. Sachno's name was second on the list. Furthermore, in *James* the defendant physician was an attending physician and, therefore, was able to select which patients he would treat. 221 Va. at 47. In contrast, Dr. Sachno knows nothing about the claimants he is to examine until after they are assigned to him. The power of selection is with DDS. The court, therefore, finds that the defendant was subject to a high level of governmental control and direction.

Plaintiff argues that the failure of defendant to comment upon the presence of the 12mm. nodule in his narrative report, a report required by the CERs, is a ministerial duty rather than the exercise of judgment or discretion. Alternatively, the defendant argues that defendant's overall examination required the exercise of judgment and discretion, and any failure to specifically mention one part of the examination falls within the "larger scheme" of his function involving discretionary acts. Defendant cites *Robertson v. Commonwealth*, 30 Va. Cir. 71 (1993), in support of his proposition. In *Robertson*, Judge Hughes rejected plaintiff's argument that an intern and resident's failure to check a blood test which had been ordered was a ministerial act and, therefore, not entitled to sovereign immunity. In doing so, Judge Hughes wrote "[a]ny one of [the aspects] can be set apart, described, and separated as independent or particular and thereby called a ministerial act." However, to "compartmentalize each such thing for the purpose of sovereign immunity misapprehends the diagnostic process .... The failure to read or determine the test results fits inextricably into a larger scheme involving discretionary acts." 30 Va. Cir. at 71.

Plaintiff counters this contention with two cases from the Supreme Court of Alabama; *Phillips v. Thomas*, 555 So. 2d 81 (1989), and *Defoor v. Evesque*, 694 So. 2d 1302 (1997). Contrary to *Robertson*, *Phillips* and *Defoor* stand for the proposition that a discretionary function "can be composed of ministerial acts, which, if performed negligently, are actionable." *Phillips*, 555 So. 2d at 85 (1989); *Defoor*, 694 So. 2d at 1303. Plaintiff urges the court to overrule *Robertson* and apply *Phillips* and *Defoor*, arguing that if *Robertson's* reasoning is adopted generally, it would largely make a dead letter of the doctrine that there is no sovereign immunity for the negligence performance of a ministerial duty, *First Va. Bank-Colonial v. Baker*, 225 Va. 72, 78 (1983), because *Robertson's* reasoning makes it impossible to segregate ministerial duties from discretionary duties. The court disagrees with plaintiff's rationale.

First, the court feels bound by the doctrine of *stare decisis* and is, therefore, reluctant to overrule *Robertson*, a Virginia case, with *Phillips* and *Defoor*, Alabama cases. Furthermore, application of the *Robertson* case to the

case at hand would not make it impossible to segregate ministerial duties from discretionary duties generally for sovereign immunity purposes as plaintiff suggests. In *Robertson*, Judge Hughes was ruling specifically on the discretion used in the diagnostic process of a physician. Application of that principle here would not extend it further to other areas of sovereign immunity; rather, it would apply Judge Hughes's ruling in cases involving medical diagnoses by a physician. Therefore, the court rules in favor of the defendant on the fourth prong of the *James* test.

The court, therefore, necessarily finds that the defendant is entitled to the cloak of sovereign immunity.